BAILEY v. CITY OF RALEIGH.

(Filed April 22, 1902.)

MUNICIPAL CORPORATIONS—*Licenses—Police Power—Intoxicating Liquors—Refunding Taxes—Acts 1901, Chap. 327.*

Under Acts 1901, Chap. 327, requiring municipal corporations to refund the amount of any tax or assessment collected from persons doing business outside the corporate limits, a city, having legislative authority to regulate the sale of liquors within a mile of its corporate limits and to receive the license taxes paid therefor, may not be required by the legislature to refund such taxes.

ACTION by A. L. Bailey, administrator, and others, against the City of Raleigh, heard by Judge *W. S. O'B. Robinson,* at October Term, 1901, of the Superior Court of WAKE County. From a judgment for the plaintiffs, the defendant appealed.

*D. L. Russell,* and *E. J. Best,* for the plaintiffs.
*W. L. Watson,* for the defendant.

FURCHES, C. J.  The plaintiff's intestate resided within one mile of the corporate boundaries of the city of Raleigh, and during the years of 1888, 1892, 1893 and 1894, carried on the business of a retail liquor dealer within one mile of the city limits.  In the year 1888, he paid the city $50 for license to carry on said business, and in 1892 he paid $300;

in 1893, he paid $300, and in 1894 he paid $150—making, in the aggregate, $800.

The Legislature of 1901 passed an act (Chapter 327), which the plaintiff contends authorizes him to recover back from the defendant city this amount ($800), and interest thereon. The statute provides that where any city, town or municipality has collected any tax or assessment upon property "outside of the actual charter or incorporate limits of such town, city or municipality, or where any town, city or municipality shall have collected a privilege tax or assessment upon any person or persons doing business outside of the actual charter or incorporate limits or boundaries as aforesaid upon such business, said town, city or municipality shall refund to such person or persons, or their proper representatives, the amount of such tax or assessment." It is not denied but what the city charter and the acts of the Legislature, in terms, authorized the city to issue the licenses and collect the tax.

This presents the question; and there is no doubt but the act in terms is sufficiently comprehensive to cover the case (as it was in all probability intended to do), and to enable the plaintiff to recover, if it was within the legislative power to give him this right.

As a general rule, the Legislature may give a remedy, but not a right; that is, where there is a cause of action, the Legislature may provide a means by which such cause of action may be enforced; but it can not make a contract for parties, nor can it take the property of one person and give it to another. No man shall be "disseized of his property except by the law of the land"; that is, by the judgment of a Court of competent jurisdiction, in which he is a party and afforded an opportunity to defend his rights. These propositions are too elementary to require citation of authority. The Legislature, for the public good, may require certain things to be done, and it may prohibit the doing of others, and it may pro-

vide a penalty for their violation.    But this is for the public good, and not *between parties,* and these can never be retroactive.    And, as the Legislature can not determine the rights of parties, and has no means of enforcing its judgments, if it could be said to have any, all that section 327 can be understood to mean is that the Legislature opens the doors of the Courts to the plaintiff to prosecute his claim, and, by this statute, says if the city has collected this money *wrongfully,* you shall have it back.

Municipalities being a part of the State, the rule laid down above as applying to individuals is somewhat modified in its application to municipal corporations.    The principle is not abandoned, but slightly modified, so as to allow such legislation to this extent, that if the plaintiff has a just and meritorious demand against the city, in which the city has *wrongfully* received his money, labor or property, but for some technical reason he is not able to recover it back, the Legislature may specially provide for his relief, as in Section 327 ; as in *Guthrie National Bank v. City of Guthrie,* 173 U. S., 528, where parties had acted as officers of the defendant before it was incorporated, and had been given certificates of indebtedness for their services, which had been transferred to the plaintiff.    After the defendant was incorporated, it refused to pay these certificates, upon the ground that they were issued before the defendant was incorporated.    This was held to be a legal technical ground of defense, but the fact remained that the defendant had received the services of these officers, policemen and others, and the Legislature passed an enabling act similar to Section 327.    The Court held that the city had received the benefit of these services, sustained the validity of the act, and the plaintiff recovered.    But the same opinion held that this could not be done unless there is a moral obligation to pay.    The same doctrine is held in *New Orleans v. Clark,* 95 U. S., 644, and the same in many other opinions and by leading text-writers.    Indeed, it seems to be

the general rule, and, so far as we have seen, it is almost without exception.

But all the text-books and decisions declare in express terms that this doctrine does not obtain except in cases where there is a moral obligation to pay, or a legal or equitable right exists that can not be enforced for some technical reason.

Black's Constitutional Law, on page 380, after announcing the doctrine above stated, says: "But the Legislature can not compel a municipal corporation to pay a claim which it is under no obligation, legal or moral, to pay; nor can it require a Court to render judgment on proof of the amount thereof."

Dillon's Municipal Corporations, on page 130, after announcing the doctrine that where there is a legal or moral obligation to pay, but which can not be enforced, proceeds to say: "The cases on this subject, when carefully examined, seem to the author to go no further, probably, than to assert the doctrine that it is competent for the Legislature to compel municipal corporations to recognize and pay debts or claims, not binding in strict law, and which, for technical reasons, could not be enforced in equity, but which nevertheless are just and equitable in their character, and involve a *moral obligation.* To this extent, and with this limitation, the doctrine is unobjectionable in principle, and must be regarded as settled, although it asserts a measure of control over municipalities, in respect to their duties and liabilities, which probably does not exist as to private corporations and individuals."

In a leading note of Mr. Freeman, in the case of *Hasbrouck v. Milwaukee,* 13 Wis., 37, 80 Am. Dec., on page 733, it is said: "But it (the Legislature) can not compel the payment of the claim which the city is neither under a legal nor a moral obligation to pay." For this he cites *Blanding v. Burr,* 13 Cal., 343; *Smith v. Morse,* 2 Cal., 524; *Nevada v. Hampton,* 13 Nev., 441; *Thomas v. Leland,* 24 Wend., 65; *Guilford v. Supervisors,* 13 N. Y., 144; *New Orleans v. Clark,* 95 U. S., 644, and a great many other cases.

This money was not levied or assessed against the plaintiff's intestate, nor his property. But it was paid by him voluntarily, upon his own application and request, and he received from the city a privilege that he did not have—a license to retail liquor. And we are unable to see that the plaintiff has any legal or equitable right to recover it back, even if the city had no right to grant the license, and certainly he has none if the city had this right. The plaintiff's right to recover, if he has such right, must rest upon the *moral obligation* the city is under to repay his money. And we would hold that if the city had no right to issue these licenses, but did so without authority, and they were of no value to the intestate, the money was wrongfully paid and there would be a *moral obligation* to return it.

This presents the question as to whether the defendant was authorized to issue licenses to parties to carry on the business of a *retailer of spirituous* liquors outside of the corporate limits.

The manufacture and sale of spirituous liquors are looked upon with disfavor, if not regarded as the enemy of public morals and good government, and, being so regarded, they are held to be subject to the police power of the government, and may be suppressed or regulated by the legislative authority. It has been so held by this Court in *State v. Barringer,* 110 N. C., 525, and many other cases. And where it is not entirely prohibited, it may be *taxed* as a means of regulating and controlling its sale and use. *Enterich v. City of Indianapolis,* 118 Ind., on page 279. And while the general taxing power, exercised for the purpose of raising money for the purpose of government, does not fall under the police power, yet the right to *tax* may be resorted to as a means of enforcing the police powers of the government. The fact that it is thus taxed makes it none the less a police regulation. The State having the right to prohibit or regulate this traffic, it has the right to authorize its municipalities, which are sub-

divisions and a part of the State, to do so. This is the settled doctrine in this State, and every town has this taxing power (where the sale is not prohibited), and the most, if not all of them, are exercising this power. Its sale is entirely prohibited by means of special legislation in many towns and localities. This is done under the exercise of the police power, owing to the evil tendency of the business, and could not be done to other legitimate businesses which have no evil tendencies.

It, therefore, only remains to be seen whether the fact that the intestate's business was outside of the corporate limits, but within one mile of them, makes any difference; or, in other words, whether the Legislature could restrict the sale for one mile around the city limits, unless the party engaging in it procured a license from the city authorities. It seems to us that the statement of this proposition affords the answer, in the affirmative. The Legislature may prohibit such sales in the whole State, or any part of its territory. It had the right to have absolutely prohibited the intestate, or anyone else from selling liquor within one mile of the corporate limits of the city of Raleigh. *This it did,* unless the party selling obtained a license—permission to do so—from the city authorities. And instead of this right to do so with the permission of the city authorities being a restriction, its effect was to relax the prohibitory rule, and to grant him a right he did not otherwise have. The law allowing him to get a license from the city took nothing from him, imposed no duty upon him; it only gave him an *option,* a right to take the license and pay the tax, or not. How he was damaged by having this privilege, this option, which he chose to accept, we are unable to see. But it seems to us that there were good reasons for this provision in the law requiring those carrying on this business within one mile of the city limits to pay the tax. The liquor traffic was restricted in the city by the imposition of a tax and a license; and it

would have been a poor protection to the city to regulate and restrict its sale in the city, when by crossing the line it could be sold without restriction. It was probably thought to be too stringent not to allow any sales to be made within the suburban territory, and this provision put them on the same footing with those doing business within the city limits.

It was contended that it was unjust, because the intestate did not have the protection of the city government. But it does not seem to us that this argument helps the plaintiff, when it is seen that the object of the restriction was to protect the city. It is said in *Emerich v. City of Indianapolis,* 118 Ind., 279: "It is now established law that the Legislature has power to impose restrictions upon the sale of intoxicating liquors, and to empower municipal corporations to lay a *special license tax* upon persons engaged in the business of dram selling—citing *Lutz v. Crawfordsville,* 109 Ind., 466; *Frankfort v. Aughe,* 114 Ind., 77. The Legislature has power, as was demonstrated, to determine *over what territory* the jurisdiction of a municipal corporation shall extend. The liquor sellers are subject to the payment of a *special tax,* because the object of this class of legislation is to restrict the business, and not because its object is to secure to the liquor sellers the *benefit of protection of municipal government.* The liquor seller is compelled to pay a *special tax* in the form of a *license fee,* in order that the business may be restricted to fewer persons. * * * The theory of the legislation on this subject is that the business is one which requires restraint, because it is *harmful to society.* * * * There is, therefore, no just reason for affirming that a person who can secure *no benefit from the municipal government* should be exempt from the special tax imposed upon those who engage in the business of selling liquor." (The italics in the above quotation are ours.)

Black on Intoxicating Liquors, Section .229, says: "A license ordinance is effective as against one selling liquor

within the territorial jurisdiction of the municipality, *though outside its corporate limits."* (Italics ours.)

In *Lutz v. City of Crawfordsville,* 109 Ind., 467, where the Legislature authorized that city to tax dealers in intoxicating liquors in said city and for two miles outside of its corporate limits, the act was held to be valid, the Court saying: "The grant of authority to regulate is generally construed as conferring an *incidental power, the authority to exact a license tax,* * * * and the Legislature has power to determine what the territorial jurisdiction of the political subdivisions of the State shall be. Judge DILLON says, with the exception of certain constitutional limitations presently to be noticed, the power of the Legislature over such corporations is supreme and transcendent; it may erect, change, divide, and even abolish them at pleasure, as it deems the public good to require. And it is certainly within the power of the Legislature to declare that no unlicensed dram-shops shall be kept within a designated distance of a few feet of the corporate limits. * * * If the Legislature has any power at all to designate limits over which the restriction of municipal corporations shall extend, then, necessarily, the subject must be within its discretion, and if this be so, *its judgment upon the question shall be conclusive."* These authorities are in harmony with *Broadfoot v. Fayetteville,* 121 N. C., 418, 39 L. R. A., 245, 61 Am. St. Rep., 668.

We think we have successfully shown by reason and authority that the city of Raleigh had power to grant the plaintiff's intestate the license it did to sell liquor outside the corporate limits, and to receive from him the taxes he paid therefor; and that the defendant is under no legal, equitable or moral obligation to return or pay them back. The defendant, in our opinion, had the same authority and right to receive this tax from the plaintiff's intestate, upon issuing license to him, that it had to receive the tax from any liquor dealer within the corporate limits, upon issuing to him a license. If the Legislature can require the city to pay this

claim of the plaintiff, it might be required to return to every liquor dealer in the city every dollar it has received from them for liquor licenses, if the Legislature should so direct, by passing a similar statute to that effect.    We are, therefore, of the opinion that the plaintiff has no cause of action and can not recover.    The judgment of the Court below is reversed.

DOUGLAS, J., *dubitante.*