[No. 8779.]

THE PEOPLE EX REL CARLSON, GOVERNOR, v. THE CITY COUNCIL OF DENVER, ET AL.

1. CONSTITUTION—*Construction.* The intent of a constitutional provision is to be ascertained from the words thereof, according to every word its plain and obvious meaning, in the sense in which it is commonly used. It is not to be assumed that the people in framing or adopting a provision of the fundamental law intended that it should contain a meaning not expressed, or any meaning different from that of the words employed. (377.)

Each provision of the constitution is to be read in connection with all the others, irrespective of the date of adoption. (380.)

2. —— *Amendments.* An amendment which unmistakably revises all former provisions upon the subject thereof, and is evidently intended as a substitute therefor, operates as a repeal of such former provisions, although it contains no express words to that effect. (380.)

3. INTOXICATING LIQUORS—*Article XXII*, of the Constitution, applies to the whole state, and supersedes all possibility of authority in the City of Denver to regulate the traffic in intoxicating liquors, contained in article XX, and the amendment thereof. Laws 1913, 669. (377.)

A license issued by such city assuming to authorize the sale of intoxicating liquors on and after January 1, A. D. 1916, is a nullity. (381.)

4. CERTIORARI—*Where Allowed.*  *Semble,* that *certiorari* lies on the relation of the Governor to compel a municipal corporation to annul a void license for the sale of intoxicating liquors.

*Original Proceedings in Certiorari.*

Hon. FRED FARRAR, Attorney General, and Mr. NORTON MONTGOMERY, Assistant Attorney General, for Petitioners.

Messrs. BARNETT & CAMPBELL, and Mr. HALSTED L. RITTER, *amici curiae.*

Mr. JAMES A. MARSH, and Mr. GEORGE Q. RICHMOND, for respondent city.

Mr. JULIAN H. MOORE, for respondent Koch.

Messrs. MORRIS & GRANT, Mr. THOMAS J. DIXON, and Mr. N. WALTER DIXON, *amici curiae.*

GABBERT, C. J., delivered the opinion of the court:

At the general election in 1914, the State Constitution was amended as follows:

"Section 1.   The Constitution of the State of Colorado shall be and hereby is amended by adding thereto a new article to be numbered and designated as 'Article XXII—Intoxicating Liquors,' which said amendment is in words and figures as follows:

## ARTICLE XXII—INTOXICATING LIQUORS.

From and after the first (1st) day of January, 1916, no person, association or corporation shall, within this state, manufacture for sale or gift any intoxicating liquors; and no person, association or corporation shall import into this state any intoxicating liquors for sale or gift; and no person, association or corporation shall, within this state, sell or keep for sale any intoxicating liquors or offer any intoxicating liquors for sale, barter or trade; Provided, however, That the handling of intoxicating liquors for medicinal or sacramental purposes may be provided for by statute.

Section 2. All provisions of the Constitution in conflict herewith are hereby repealed." Laws of 1915, 165.

Pursuant to Article XX of the State Constitution, the City and County of Denver, several years since, adopted a charter which by section 75 thereof, provided that, "The council shall by ordinance provide for the licensing, taxing and regulating of liquor saloons, dram shops, and tippling houses, and the selling or giving away of any spirituous, malt or intoxicating liquors by any person or corporation within the City and County, * * * *."

The Twentieth General Assembly passed an act entitled "Intoxicating Liquors," Laws of 1915, 275, which provides:

"Section 1. PROHIBITION.—No person, association or corporation shall, within this state, manufacture for sale or gift, any intoxicating liquors; and no person, association or corporation shall import into this state any intoxicating liquors, for sale or gift; and no person, association or corporation shall, within this state, sell or keep for sale any intoxicating liquors, or offer any intoxicating liquors for sale, barter or trade. Provided, however, That the handling of intoxicating liquors for medicinal or sacramental purposes may be done as in this act provided."

This is followed by numerous sections, the object of which is to enforce its provisions. By section 28 of the act it was provided:

"ACT IN FORCE.—This act, and every section thereof, shall become operative and be in full force and effect from and after the first day of January, A. D. 1916. All acts and parts of acts in conflict with this act are hereby repealed, said repeals to become effective from and after January 1st, 1916."

On the 18th day of May, 1915, the electors of the City and County of Denver adopted an amendment to the charter of that municipality which is as follows:

"Section 75a (which, in the 1914 Revised Edition of

the Charter, is to be known as 99a). The council shall, by ordinance, provide for the licensing, taxing and regulating of druggists, distillers, brewers, confectioners, grocers, delicatessen venders, clubs, barbers, masseurs, rubbers, athletic associations, and any other persons, associations or corporations, who are now engaged, or who may hereafter engage, in the handling, manufacture, sale, gift, distribution, disposition, transportation, carriage, transfer, and delivery of any intoxicating liquors within the City and County:　*　*　*　."

Then follows conditions restricting the issuance of licenses, and section 76a (which, in the 1914 Revised Edition of the Charter is to be known as 100a) designating the persons by class to whom liquor shall not be sold or given. This is followed by section 81 (being section 105 in the 1914 Revised Edition), which provides in substance, that the existing provisions of the charter, and the ordinances, regulating the issuing of saloon licenses shall continue in force and effect until changed as authorized, and that in no case shall a fee for such license exceed the sum of $600.00 per annum.

On the 19th day of July following, the City Council of the City and County of Denver, assuming to act under and by virtue of the above amendment to the charter, passed and approved an ordinance, numbered 76 of the series of 1915, which purported to amend sections 3 and 17 of an ordinance numbered 223, series of 1913, entitled, "An ordinance to license and regulate the sale, barter, and exchange or other disposition for profit or gain, of any malt, vinous or spirituous liquors in quantities of less than one gallon," which amendment provided that the Commissioner of Finance, acting *ex officio* as Excise Commissioner of the City and County of Denver, should grant licenses for the sale of malt, vinous and spirituous liquors upon conditions therein specified.

On the 6th day of July, 1915, the Commissioner of

Finance, acting in his capacity as Excise Commissioner, issued a license to one August Koch, authorizing him to sell intoxicating liquors at his place of business, 6400 Gilpin street, in the City and County of Denver, for a period extending beyond January 1st, 1916.

Thereafter the People of the State of Colorado, on the relation of His Excellency, Governor Carlson, and Attorney General Farrar, instituted an original proceeding in *certiorari* against the City Council of the City and County of Denver, and Clair J. Pitcher, Commissioner of Finance and Ex officio Excise Commissioner of that municipality, and August Koch, the object of which is to review the proceedings concerning the issuance of a liquor license to Koch. The petition recites the facts above narrated, and also alleges other facts, which, however, it is not necessary to set out, because from the return to the writ, which admits the issuance of a license to Koch to sell intoxicating liquor beyond the first day of January, 1916, it is conceded by counsel for respondents, by way of demurrer to the petition, and motion to quash the writ, that the petition presents the following questions: First, Under Article XX, is the sale or prohibition of intoxicating liquors of local and municipal concern only? and second, Does Article XXII apply to the whole state, or is it in any sense qualified by Article XX? Although counsel on behalf of respondents claim that the ultimate question is, (quoting from their brief), "Does Article XXII of the Constitution of Colorado, (the prohibition amendment), deny to the City and County of Denver the power to locally prohibit and regulate the liquor traffic, theretofore conferred upon them, as we here claim, by the amendement to section 6 of article XX, and the charter amendment?" This presents for consideration the question of whether Article XXII applies to the whole state, and if this be determined in the affirmative, the question of whether the control of the sale of intoxicating liquors under Article XX ever was

exclusively a matter of local and municipal concern, is eliminated and need not be determined.

Article XX, which was adopted in 1902, provides, *inter alia*, section 4: "* * * the people of the City and County of Denver are hereby vested with and they shall always have the exclusive power in the making, altering, revising or amending their charter." Section 5: "The citizens of the City and County of Denver shall have the exclusive power to amend their charter or to adopt a new charter, or to adopt any measure as herein provided; * * *" Section 8: "Anything in the constitution of this state in conflict or inconsistent with the provisions of this amendment is hereby declared to be inapplicable to the matters and things by this amendment covered and provided for."

On November 5th, 1912, section 6 of Article XX was amended, (Session Laws of 1913, 669), which, so far as material, as we gather from the brief of counsel for respondents, is as follows:

"The people of each city or town in this State, having a population of two thousand inhabitants as determined by the last preceding census taken under the authority of the United States, * * * are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters.

"Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the State in conflict therewith. * * *

"From and after the certifying to and filing with the Secretary of State of a charter framed and approved in reasonable conformity with the provisions of this article, such city or town, and the citizens thereof, shall have the powers set out in sections 1, 4 and 5 of this article, and all other powers necessary, requisite or proper for the govern-

ment and administration of its local and municipal matters, * * *

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters, and the enumeration herein of certain powers shall not be construed to deny to such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.

"The statutes of the State of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charter of such cities and towns, or by ordinances passed pursuant to such charters. All provisions of the charters of the City and County of Denver, * * * as heretofore certified to and filed with the secretary of state, * * * which provisions are not in conflict with this article, * * * are hereby ratified, affirmed and validated as of their date. The provisions of this section 6 shall apply to the City and County of Denver."

By virtue of Article XX, and the amendment above quoted, counsel for respondents contend that because this court decided in *Huffsmith vs. People*, 8 Colo. 175, 6 Pac. 157, 54 Am. Rep. 550, that the legislature of Colorado had the power and authority to regulate the liquor traffic, and could delegate this power to municipalities, that therefore, by Article XX, and the amendment thereto, the people clothed the municiplity of the City and County of Denver with full, absolute and exclusive power of local self-government, which included the right to regulate the liquor traffic within its boundaries. It will not be, and is not claimed that the people, in whom is vested the exclusive authority to amend the Constitution, have not the power to take away from the City and County of Denver the authority to regulate the liquor traffic within its boundaries, even if it be conceded that such authority was ever conferred upon it.

Section 2, Article II of the constitution provides: "That the people of this state have the sole and exclusive right of governing themselves, as a free, sovereign and independent state; and to alter and abolish their Constitution, and form, of government whenever they may deem it necessary to their safety and happiness, Provided, Such change be not repugnant to the Constitution of the United States." But counsel for respondents contend that because Article XX, and the amendment thereto, constituted a part of the Constitution when the prohibition amendment was proposed and adopted, that therefore, it was not the intention to thereby deprive the City and County of Denver of its authority under Article XX to regulate the liquor traffic within its territorial limits, because in the prohibition article there is no express and specific provision depriving it of such authority.

The intent of a constitutional provision must be determined from its words, and its words are to be understood in the sense they are generally used, *Odgen vs. Sauders*, 12 Wheaton 214 (332), 6 L. Ed. 606, so that every word employed is to be given its plain and obvious meaning; and it must be assumed that the people in framing and adopting a constitutional provision read it with the help of common sense, and it will not be presumed that they intended it should contain a hidden meaning. 1st Story on the Constitution, sec. 451. In other words, in construing a constitutional provision, for the purpose of ascertaining the intent of the people in adopting it, when its language is explicit, the courts are bound to seek for the intention in the words of the provision itself, and they are not to suppose or hold that the people intended anything different from what the meaning of the language employed imports. Tested by these plain and simple rules, it is obvious that Article XXII was intended to apply to the whole state, and that it means just what its language imports in this respect,—nothing

more and nothing less. *Schwartz vs. People,* 46 Colo. 239, 104 Pac. 92. It recites that from and after the first day of January, 1916, "* * * *no person,* * * * shall, *within this state,* manufacture for sale or gift any intoxicating liquors; and *no person,* * * * shall import into *this state* any intoxicating liquors for sale or gift; and *no person,* shall *within this state* sell or keep for sale any intoxicating liquors or offer any intoxicating liquors for sale, barter or trade; * * * ," with the exception that the handling of liquors for medicinal or sacramental purposes may be provided for by statute. By employing the word *"state"* in each instance, it includes the entire state and not a part. If it was the intention that the City and County of Denver should be exempt from its operation, words to that effect would have been employed. In order to conclude that the City and County of Denver is not bound by its provisions, it would be necessary to read into the article apt words from which it appeared that it was not included, or that the inhibitions, with respect to the liquor traffic, did not apply to it. To do so, when the language is clear and explicit that no person from and after the 1st day of January 1916, shall manufacture or import for sale or gift, or from and after that date shall sell, or keep for sale or offer for sale, any intoxicating liquors within this state, would be to ignore the plain language of the article and by judicial construction frame and adopt a constitutional provision for the people instead of construing the one they adopted. Our functions are judicial, not legislative. When a constitutional provision is expressed in unambiguous terms, when the sense is manifest, there can be no reason not to adopt the sense which it naturally presents. To do otherwise, in order to restrain it, is to elude it.

Certain of counsel, *amici curiae,* who also contend that Article XXII does not apply to the City and County of Denver, base their argument upon somewhat different lines

from those considered. Their premise is, that by article XX
the people of the City and County of Denver were, as to all
local and municipal matters, freed from the provisions of
the Constitution in force when it was adopted, or coming
into force thereafter, in conflict or in inconsistent with it,
until by constitutional amendment it was otherwise pro-
vided, which has not been accomplished by the mode pur-
sued. In support of this proposition, they contend that by
Article XX, and the amendment thereto, it is established
beyond question, that the sale or the prohibition of the sale
of intoxicating liquors in that municipality is purely a local
matter, the absolute control of which was vested in the City
and County of Denver; and, that as section 8 of Article XX,
provides: "Anything in the constitution of this state in con-
flict or inconsistent with the provisions of this amendment
is hereby declared to be inapplicable to the matters and
things by this amendment covered and provided for," which
it is claimed refers not merely to the constitution as it ex-
isted when the provision was adopted, but to the constitu-
tion as it exists whenever that provision is read in con-
nection with any future amendment, inconsistent with or
inapplicable to the grant made by Article XX; that there-
fore, the people of the state could not take away that
authority by a constitutional amendment, except by express-
ly amending Article XX, or expressly declaring that the
authority thereby granted was taken away.

In considering these propositions, it may be conceded,
without so deciding, that counsel are correct in assuming
that Article XX, and the amendment thereto, the City and
County of Denver was vested with authority to control the
liquor traffic within its territorial limits, nevertheless, the
vital question is, has it been deprived of that authority by
the adoption of Article XXII? That such was the intent
is manifest from the unequivocal and plain language of that
article, although it does not specifically refer to Article XX,

and the question to determine, and argued by counsel whose brief we are considering, is, have the people failed to make their intent effective by failing in Article XXII to refer to Article XX, or in not adopting the former as an amendment to the latter, or in not expressly declaring in Article XXII that its provisions repeal all authority conferred upon municipalities organized under Article XX to control the liquor traffic within their boundaries? Each provision of a constitution should be read in connection with all others irrespective of the date they were adopted, but whether an amendment is modified or limited by what precedes depends upon its language, or whether it modifies, changes or repeals preceding provisions. Thus testing Articles XX and XXII, it is clear beyond question that section 8 of Article XX does not apply to Article XXII. The latter is complete within itself on the subject of intoxicating liquors. There is no provision of the constitution, nor rule of law, which requires an amendment to refer to or in express terms repeal any particular section or article, and when such amendment unmistakably revises all former provisions on the subject it embraces and is evidently intended as a substitute for them, although it contains no express words to that effect, it operates as a repeal of the former on the same subject, and particularly is this true when the amendment, as does Article XXII, by section 2, declare "All provisions of the constitution in conflict herewith are hereby repealed." The amendment of a state constitution is an exertion of the sovereign power of the people to give to their express will the force of a law supreme over every person and everything in the state, so long as it does not conflict with the federal Constitution, and it supplants all other constitutional provisions, laws and rules inconsistent with it. *Gillespie vs. Lightfoot,* 103 Tex. 359, 127 S. W. 799; *People vs. Cassiday,* 50 Colo. 503, 117 Pac. 357. In construing the effect of an amendment to a constitution it was

said in *People vs. Metz,* 193 N. Y. 149, 85 N. E. 1070, 24 L. R. A. (N. S.) 201, and quoted with approval in the *Cassiday* case, *supra*: "In construing a constitution all its provisions relating directly or indirectly to the same subject must be read together and any amendment in conflict with prior provisions must control, as it is the latest expression of the people.  *  *  *  The presumption is that the people in exercising their supreme power did not do a vain act, but effected a definite purpoose.  *  *  *  Every provision of the constitution as it was before it was amended which so conflicts with the amendment that it cannot be fairly harmonized therewith, necessarily yields thereto, but only to the extent necessary to make the amendment reasonably effective."  That which is necessarily implied by a constitutional provision is as effective as though written therein, and when by Article XXII it was declared that the manufacture for sale or gift or the importation or the keeping or offering for sale for these purposes of intoxicating liquors within the state from and after a specified date, with the exception that for named uses the handling of such liquors might be provided by statute, and expressly repealed all constitutional provisions in conflict with the article, it is necessarily implied that its inhibitions apply to the whole state, and that the article supplants every other constitutional provision and every law in the state, and every municipal regulation and charter provision inconsistent with it from and after the date it takes effect.

Our conclusion is that Denver is not exempt from the provisions of Article XXII, and hence the license issued to respondent Koch, in so far as it authorizes him to sell liquors on and after January first 1916, is a nullity.  The official respondents are therefore directed to cancel such license accordingly.

Decision *En Banc.*