No. 14,367.

CITY AND COUNTY OF DENVER v. THE PEOPLE.
(88 P. [2d] 89)

Decided February 14, 1939. Rehearing denied March 13, 1939.

Mr. MALCOLM LINDSEY, Mr. THOMAS H. GIBSON, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, for the people.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ACTION by the people to recover of and from the City and County of Denver, a municipal corporation, eighty-

five per cent of the license fees collected by said city under the provisions of chapters 82 and 142, Session Laws 1935, subsequent to January 1, 1937, and to permit their availability for the old age pension fund. The people were successful below, and it is to review the judgment in their favor, entered on the overruling of the city's demurrer, that the writ of error herein is prosecuted by the city.

The city's single assignment of error is, ''The court erred in overruling the demurrer of the defendant to the complaint of the plaintiff.''

The demurrer contained two grounds. The first was alleged insufficiency of facts, which we need not consider because, if the constitutional objections urged are not sound, the complaint does state sufficient facts to constitute a cause of action. The second ground was as follows:

''That said complaint is framed upon the theory and is based upon a construction of that certain Amendment of the Constitution of Colorado that was enacted by the people at the November, 1936, election, and entitled 'An Act Amending the State Constitution by adding thereto a new Article concerning Old Age Pensions, and providing funds for the payment thereof,' under which the plaintiff, in substance, claims that the Old Age Pension Fund created and established in the Treasury of the State of Colorado by said Amendment, was and is intended to include, and includes, 85% of the Liquor License Fees of the defendant for the collection of which special provision is made by chapter 142 Session Laws of 1935, and 85% of the Liquor Fees of said City and County of Denver on fermented, malt beverages for the collection of which special provision is made by chapter 82 Session Laws of Colorado 1935, and the said constitutional amendment if, when and as so construed is in violation of and repugnant to:

''1. Section 24 of Article V of the Colorado Constitution [Revival, amendment and extension of laws].

"2. Section 25 of Article II of the Colorado Constitution [Due process of law].

"3. Section 6 (as amended), of Article XX of the Colorado Constitution [Home rule for cities].

"4. So much of the Fourteenth Amendment of the Constitution of the United States of America as provides as follows: 'Nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any persons within its jurisdiction the equal protection of the laws.' "

"5. Section 10, Article I of the Federal Constitution [Ex post facto laws. Obligation of contracts].

"6. Section 11, Article II of the Colorado Constitution [Ex post facto laws]."

The crux of this litigation is the construction to be given to, and the legal effect of, that part of section 2 of the Old Age Pension Amendment, chapter 200, Session Laws, 1937, page 881, reading as follows: "Section 2. There is hereby set aside, allocated and allotted to the Old Age Pension Fund sums and money as follows: * * * (b) Beginning January 1, 1937, eighty-five per cent of all net revenue accrued or accruing, received or receivable from taxes of whatever kind upon all malt, vinous or spirituous liquor, both intoxicating and nonintoxicating, and license fees connected *therewith*."

Since January 1, 1937, the city has collected certain liquor license fees under the provisions of chapters 142 and 82, Session Laws 1935, chapter 89, volume 3, '35 C. S. A. (being the intoxicating and nonintoxicating liquor laws respectively), and now seeks to retain them as part of its general fund. The people contend that under section 2 (b), such fees must be turned over to the state treasurer to be placed in the old age pension fund.

We shall consider the questions in the order set forth in the demurrer.

1. Section 24, article V of the state Constitution reads as follows: "No law shall be revived, or amended, or the provisions thereof extended or con-

ferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length.''

All that would be necessary, if we desired to summarily dispose of this question, would be to say that we have specifically held that this section of the amendment does not violate this constitutional provision. *In re Interrogatories,* 99 Colo. 591, 65 P. (2d) 7. However, since no reason was there assigned, we may repeat our pronouncement in *Denver Circle R. Co. v. Nestor,* 10 Colo. 403, 409, 15 Pac. 714, where, after a discussion of the purposes of this provision (section 24 of article V), we said, ''We also indorse the salutary rule that the argument ab inconvenienti is not to be permitted to influence the courts to defeat by construction a constitutional mandate.'' It also may be added that in the opinion in the principal Colorado case relied upon by the city on this point (*People v. Friederich,* 67 Colo. 69, 74, 185 Pac. 657), we quoted from *Callahan v. Jennings,* 16 Colo. 471, 27 Pac. 1055, as follows: ''The intent and wisdom of this provision are obvious. It was framed for the purpose of avoiding confusion, ambiguity and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume.''

What appears to be the general rule holds that it (section 24, article V) was not intended to abolish the power of the legislature (a fortiori, the people) to enact measures which amend pre-existing legislation by implication only. 59 C. J. 871, and Colorado cases cited.

2. Does the attempted taking of these license fees violate the due process clause of the Colorado (section 25 of article II) and federal (Fourteenth Amendment) Constitutions? Assuming for the moment that the city has a property right in the license fees here involved (a question which we shall later discuss), it does not necessarily follow that, in so far as our state Con-

stitution is concerned it may invoke the due process clause, because section 28 of article II provides: "The enumeration in this Constitution of certain rights shall not be construed to deny, impair or disparage others retained by the people." The most important retention is the right of the people to amend their Constitution in any manner they see fit, so long as such amendments are not repugnant to the Constitution of the United States. Whether any repugnancy to the federal Constitution is shown, also will be discussed later.

3. There is no merit in the contention that the act under consideration violates section 6, article XX of the state Constitution because the collection of these license fees is a local and municipal matter. No one would seriously contend that the granting of licenses for the manufacture and sale of intoxicating liquors is not an incident of the liquor traffic and controllable as such. "This presents for consideration the question of whether article XXII applies to the whole state, and if this be determined in the affirmative, the question of whether the control of the sale of intoxicating liquors under Article XX ever was exclusively a matter of local and municipal concern, is eliminated and need not be determined." *People v. Denver,* 60 Colo. 370, 374, 153 Pac. 690. As to whether or not said article XXII (as amended in 1932) applies to the whole state has been "determined in the affirmative." *Colorado Springs v. People ex rel.,* 99 Colo. 525, 527, 63 P. (2d) 1244.

4. City contends further that a construction which upholds the people's demand for these license fees would violate section 10, article I of the federal Constitution and violate and impair a contractural obligation and would enforce an ex post facto law. It is on this point that the violation of the due process clause also hinges, because it cannot be violated if the city has no property right in the subject of the controversy. City further contends that it has some sort of a vested right to these funds because they were collected under chap-

ters 82 and 142, supra, which are unrepealed, but its position in this behalf is refuted by language quoted from cases cited by its counsel, e. g., "a tax levy by a municipality, germane to the purposes for which it was incorporated, *not in excess of a limitation fixed by the constitution * * *." Portland v. Welch,* 154 Ore. 286, 59 P. (2d) 228. "We think it is, also, manifest that all revenues coming into the treasury of a municipality in pursuance of law, *unless the law specifically provides otherwise,* becomes a part of its general fund * * *." *State v. Sheppard,* 79 Wash. 328, 330, 140 Pac. 332, and, "No man shall be 'disseized of his property *except by the law of the land.' " Bailey v. City of Raleigh,* 130 N. C. 209, 41 S. E. 281. The attempt of the city herein to keep these license fees *would be in excess of the limitations fixed by our Constitution. The law does specifically provide otherwise. If the city be disseized, it is by the law of the land.* To the extent that chapters 82 and 142 (c. 89, '35 C. S. A.) supra, conflict with the Old Age Pension Amendment, they must yield to the Constitution.

 ██ The liquor code of this state is deemed an exercise of the police power. Section 15, chapter 89, '35 C. S. A., S. L. '35, p. 597, §1. And, "a vested interest on the ground of conditions once obtained cannot be asserted against the proper exercise of the police power." *Colby v. Board of Adjustment,* 81 Colo. 344, 352, 255 Pac. 443; *Hadacheck v. Sebastian,* 239 U. S. 394, 410, 36 Sup. Ct. 143, 60 L. Ed. 348. The pertinent provisions of the amendment must be read into said chapter 89.

 "In this state there never has been, and is not now, an inherent, natural or common-law right in the citizen to sell intoxicating liquors. Indeed he has no, absolute right to sell it at all. It is but a privilege he gets under a license granted." *Schwartz v. People,* 46 Colo. 239, 248, 104 Pac. 92. The city is in no different or better position than a citizen. "That this power depending, as it does, upon legislative grant, is subject to recall in the discretion of the general assembly [again

a fortiori, the people], is too clear for argument." *Parsons v. People,* 32 Colo. 221, 237, 76 Pac. 666. It is obvious, that the city acquired no property right in these fees.

5. Finally, on the constitutional objections. The purpose of this action is only to obtain eighty-five per cent of the liquor license fees collected after January 1, 1937; the officials are charged with notice of the provisions of the Old Age Pension Amendment adopted at the November election in 1936, therefore, no question of an ex post facto law is.involved. The amendment was prospective in its operation on these license fees, and not retrospective; consequently section 10, article I of the federal Constitution, and section 11, article II of the state Constitution are not here involved. Even though the operation of the act concerning these fees was retrospective, it still is not vulnerable to the constitutional objection raised by the city, since, as we have shown, the latter had no property right in them, and because "when it [we substitute the Old Age Pension Amendment] became effective it operated on all liquor license revenue still existing and undisposed of. Such were the funds here in question." *Colorado Springs v. People, supra,* p. 527. The law will assume that the city still had the revenue derived from these fees.

On the question of statutory construction, we may observe that in *In Re Interrogatories,* 99 Colo. 591, 595, 65 P. (2d) 7, we were asked the following: Third: "If the court holds that section 2 (b) of said amendment is self-executing, does it operate to repeal, in its entirety, section 3 (b) of chapter 8, Second Extraordinary Session Laws, 1936? This section reads as follows: '(b) All net revenues accrued or accruing, received or receivable from the excise taxes upon intoxicating liquors and license fees, which are now payable to the state treasury pursuant to the provisions of chapter 142, Session Laws of Colorado 1935; provided however, that 50% of the monthly revenues so derived shall remain

in and be credited to general revenue fund of the state, until such credit shall have aggregated the sum of one million dollars ($1,000,000.00) and thereafter all such revenues received shall be credited to the state public welfare fund.' ''

"11-(3) The answer is 'Yes.' '' All the Justices concur. Page 599.

Since no reason was given in answering the interrogatory above quoted, we deem it expedient to here elaborate our answer. The language used in section 2 (b) of the Old Age Pension Amendment clearly was intended to be substituted for that quoted from section 3 (b), chapter 8, Second Extraordinary Session Laws, 1936. As will be noted, the words "which are now payable to the state treasury" are omitted from the Old Age Pension Amendment.

We are not here concerned with taxes upon liquor, either ad valorem or excise, notwithstanding counsel's argument that the antecedent of the word "therewith," the last word in said section 2 (b), is "taxes" and not "liquors." The plain, unambiguous meaning is, that receipts from license fees in connection with the traffic in "malt, vinous, and spirituous liquors, both intoxicating and nonintoxicating," wherever such license fees are exacted, are "hereby set aside, allocated and allotted to the Old Age Pension Fund."

The rule of construction applicable is, "Thus, relative and qualifying words and phrases, where no contrary intention appears, will be construed to refer solely to the last antecedent with which they are closely connected." 12 C. J. 706, §50.

"When the Constitution speaks in plain language in reference to a particular matter [license fees connected with the liquor business], the courts have no right to place a different meaning on the words employed, because the literal interpretation may happen to be inconsistent with other parts of the instrument [stat-

utes, even more so] in relation to other subjects.'' Ibid. §49.

If it be urged, that this construction constitutes an unjustifiable interference with a local or municipal purpose, the answer is, that under chapter 201, Session Laws 1937, these same fees, after being paid into the state treasury, immediately will be reallocated and distributed to the respective ''old age pension funds'' in the sixty-three counties, available for pensioners in the local communities.

There is no such halo surrounding the police power vested in our municipalities, as to render them immune from the highest prerogative exercised by the people, and expressed in this constitutional amendment.

Judgment affirmed.

MR. JUSTICE BOCK concurs specially.

MR. JUSTICE YOUNG, MR. JUSTICE KNOUS and MR. JUSTICE BURKE dissent.

MR. JUSTICE BOCK specially concurring.

We are here concerned only with license fees upon all malt, vinous or spirituous liquor, both intoxicating and nonintoxicating, as affected by the so-called Old Age Pension Amendment. S. L. '37, p. 881, c. 200.

No limitation of the police power of the state, or any political subdivisions thereof, is involved. The people sue the city for said license fees under section 2 (b) of the amendment, which reads as follows:

''Section 2. There is hereby set aside, allocated and allotted to the Old Age Pension Fund sums and money as follows:

\* \* \* \* \*

''(b) Beginning January 1, 1937, eighty-five per cent of all net revenue accrued or accruing, received or receivable from taxes of whatever kind upon all malt, vinous, or spirituous liquor, both intoxicating and nonintoxicating, and *license fees connected therewith.*'' (Italics mine.)

The question is whether this section includes city as

well as state license fees. The amendment specifies "all" net revenue from license fees. There is, therefore, no ambiguity as to what the people had in mind. The city would limit and restrict this amendment to license fees collected by the state. They would read in the word "state." This would seem to be an amendment to an amendment by judicial process and an encroachment upon the power of the people to amend their Constitution. No citation is necessary that this should not be done.

Let us assume, however, that the section involved needs interpretation through judicial processes. "Interpretation, as applied to a written constitution, means the determination of the true sense of the words used in the text." 12 C. J., p. 697, §35.

I shall refer to some of these rules of construction as applied to state constitutions and amendments thereto.

In *Post Printing & Publishing Co. v. Shafroth*, 53 Colo. 129, 124 Pac. 176, we had before us for judicial interpretation a constitutional amendment, in which the plaintiff in error sought to have it declared null and void. In distinguishing between statutory and constitutional construction, we had this to say (page 134): "If the provisions complained of were statutory, than [then] many of the contentions urged would be applicable, some of which would be well taken, but when we consider that the amendment itself is a part of the constitution and entitled to the same consideration as such as any other portion of that instrument, it can then be readily ascertained that it is not subject to the sundry attacks made upon it, and that most, if not all, of the cases cited to support them are inapplicable to the language used, or are not in point when applied to a constitutional amendment."

In 12 C. J., 707, section 54, we find the following language: "Courts may not supply what they deem unwise omissions, nor add words which substantially add to or take from the constitution as framed."

Further, quoting from 12 C. J., 709, section 60: "A clause in a constitutional amendment will prevail over a provision of the original instrument inconsistent with the amendment, for an amendment to the constitution becomes a part of the fundamental law, and its operation and effect cannot be limited or controlled by previous constitutions or laws that may be in conflict with it.

12 C. J., 710, section 62: "If the meaning of the constitution itself is plain, it is neither necessary nor permissible to resort to extrinsic matters for its construction."

We are not concerned with the wisdom, or lack of it, of this amendment. In this connection I quote from the opinion in *Post Printing & Publishing Co. v. Shafroth, supra,* language appearing on page 145, as follows: "But as this is a matter which the entire people had the right to decide for themselves, in the manner desired by themselves, and having so decided it, the policy or wisdom of the method is something with which this court has no concern, regardless of the previous history pertaining to it; otherwise, to give such matters any weight would be to have the judicial department of the state substitute or take into consideration its judgment as contradistinguished not only to that of the legislature, but to that of the whole people declared by and in a constitutional amendment. This ought not to be, and is something which all the authorities hold can not be done."

In *People ex rel. Carlson v. Denver,* 60 Colo. 370, 377, 153 Pac. 690, we had before us the construction of a constitutional amendment. Speaking through Chief Justice Gabbert, we had this to say: "The intent of a constitutional provision must be determined from its words, and its words are to be understood in the sense they are generally used, *Ogden vs. Sauders,* 12 Wheaton 214 (332), 6 L. Ed. 606, so that every word employed is to be given its plain and obvious meaning; and it must be assumed that the people in framing and adopting a constitutional provision read it with the help of common

sense, and it will not be presumed that they intended it should contain a hidden meaning. 1st Story on the Constitution, sec. 451. In other words, in construing a constitutional provision, for the purpose of ascertaining the intent of the people in adopting it, when its language is explicit, the courts are bound to seek for the intention in the words of the provision itself, and they are not to suppose or hold that the people intended anything different from what the meaning of the language employed imports.''

To what extent, if any, should the objects and purposes of the Old Age Pension Amendment influence the construction of the particular section here involved? This section determines in part the revenues necessary to pay the pension. The amendment establishes a minimum pension of $45 per month. We may take judicial notice of the fact that sufficient funds have very seldom been raised to meet this minimum. Moreover, the same issue as to the adoption or rejection of this amendment was again before the people at the last general election, and its adoption was again confirmed by a large majority.

In this connection I desire to quote the language of Chief Justice Marshall in the early case of *Gibbons v. Ogden,* 9 Wheaton (U. S.) 1, 188, 6 L. Ed. 23: ''If, from the imperfection of human language, there should be serious doubts respecting the extent of any given power, it is a well settled rule that the objects for which it was given especially when those objects are expressed in the instrument itself, should have great influence in the construction.''

I am of the opinion that the constitutional objections raised are without merit and that the judgment of the lower court should be affirmed.

MR. JUSTICE YOUNG dissenting.

I respectfully dissent from the opinion of the majority of the court as contained in the opinion by Mr. Justice Bakke and from the specially concurring opinion by Mr. Justice Bock.

I think there is no doubt as to the power of the people by constitutional amendment to allocate to the old age pension fund the license fees which the cities, prior to the passage of the amendment in question—article XXIV of the state Constitution—had been authorized by the General Assembly to collect and retain as a part of their general revenues. Chapter 82 and chapter 142, S. L. '35. Prior to the passage of that amendment we had held that the General Assembly had that power. *City of Colorado Springs v. Campbell,* 99 Colo. 525, 63 P. (2d) 1244. In fact the specific point determined by that case was, that when the legislature permitted the city to collect a tax under article XXII of the Constitution vesting in the state the exclusive power to regulate the sale of intoxicating liquors and ordered that fees so collected be paid over to the old age pension fund that that mandate of the legislature was enforceable. If the General Assembly had such power a fortiori the people might exercise a like power by constitutional amendment. However, the Colorado Springs case in no wise negatived the power of the General Assembly to permit the cities to retain license fees under laws then in force, if any, or under laws thereafter to be enacted. When the Old Age Pension Amendment was passed with chapters 82 and 142 of the Session Laws of 1935 in force giving cities the right to retain certain license fees collected in the exercise of a delegated police power such delegation of authority was clearly within the power of the legislature under article XXII of the Colorado Constitution.

The sole question presented by the cause before us is as to the construction to be placed on subsection (b) of section 2 of article XXIV of the Colorado Constitution (c. 200, S. L. '37, p. 881) which reads as follows: "Section 2. There is hereby set aside, allocated and allotted to the old age pension fund sums and moneys as follows: * * * (b) Beginning January 1, 1937, eighty-five per cent of all net revenue accrued or accruing, received or receivable from taxes of whatever kind upon all malt, vin-

ous, or spirituous liquor, both intoxicating and nonintoxicating, and license fees connected therewith.''

In his specially concurring opinion, Mr. Justice Bock says: ''The amendment specifies 'all' net revenue from license fees. There is, therefore, no ambiguity as to what the people had in mind.'' Section 3 of article X of the Constitution says: ''*All taxes* shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.'' (Italics mine.) The same inclusive word ''all'' is used in section 3 of article X as in subsection (b) section 2 of article XXIV, but we have held repeatedly that the words ''all taxes'' in section 3 does not refer to excise taxes, but only to ad valorem taxes. *Denver City Ry. Co. v. Denver,* 21 Colo. 350, 41 Pac. 826, 52 Am. St. Rep. 239, 29 L. R. A. 608, cited in notes; *Parsons v. People,* 32 Colo. 221, 237, 76 Pac. 666; *American Smelting, etc. Co. v. People,* 34 Colo. 240, 82 Pac. 531. If subject to limitation in the one case there would seem to be no reason for holding it not subject to limitation in the other when reason and sound principles of constitutional construction require it.

The case cited from the Supreme Court of the United States, *Gibbons v. Ogden,* 9 Wheaton (U. S.) 1, 188, 6 Law Ed. 23, in the specially concurring opinion, supra, announces the correct and a liberal rule of construction of the Constitution of the United States. The federal government is a government of delegated powers. It was beyond the power of human foresight to forecast all possible federal governmental situations that might arise and to provide by specific delegation the powers to meet them. Whether a power is delegated to the federal government by implication may very well be determined from a consideration of the objectives intended to be acomplished. If within the general objective the power to meet the situation with propriety may be held to have been delegated by implication with the specific delegation of power to accomplish the general purpose. But in construing a state constitution such a rule is not ap-

plicable. The state—meaning the people—possesses residual power, that is, all power not delegated. It possesses power to act as it sees fit in any situation except where it has granted the exclusive right of action to the federal government or consented to be restricted from exercising it by the federal Constitution or has expressly limited itself from exercising by its own constitution. The power so to act being vested in the people to be exercised by them through their legislative representatives or directly by passage of an initiated measure should not be hindered nor obstructed by a judicial construction of the state Constitution that writes into it restrictions on its exercise by implication. In order for a court to hold that a state constitution thwarts an attempted act of the people through their general assembly, it should be able to point out that the state constitution *expressly* forbids it. Courts, sworn to uphold the Constitution of the state, may not approve the violation of any express constitutional prohibition. Neither may they extend the scope of its prohibitions beyond their clear terms. This principle was well stated and applied in *Parsons v. People, supra,* wherein Mr. Justice Campbell speaking for the court said: "And since it is always to be borne in mind that a state constitution is an instrument of limitations upon, and not one of grants of, legislative power, courts should be slow to hold, under a constitution like ours, that the state has no other source of revenue for state purposes except that resulting from a direct tax upon property. Such a conclusion should be reached only where express and unequivocal language in the constitution, too plain to admit of doubt, or the necessary implication from something therein expressed, leaves no other alternative." The federal Constitution is analogous to a general power of attorney granted by a principal to an agent to accomplish certain general objectives and is to be liberally construed to effectuate such purposes. The state Constitution is analogous to a restriction self imposed on the principal (the people of the state) and is

to be strictly construed in order that the principal may not be unduly hampered in the conduct of his own business.

The specially concurring opinion points out that, "This section [subsection (b) section 2, article XXIV] determines *in part* the revenues necessary to pay the pension. The amendment establishes a minimum pension of $45 per month." (Italics mine.) It is pertinent to observe that the amendment contemplates that the General Assembly in the exercise of its discretion may or may not add other monies to the fund, for subsection (f) of section 2, supra, allotted to it "such other money as *may be allocated* to said fund by the General Assembly." Assuming that "we may take judicial notice of the fact that sufficient funds have very seldom been raised to meet this minimum" of $45, it does not follow that we, rather than the General Assembly, must furnish them by construing into the amendment a restriction on the power of the General Assembly such that it may not permit to stand an already existing lawful allocation of a part of the liquor license fees to the cities. The opinion of the court construes the amendment as not only so restricting the power of the General Assembly to allow existing valid legislation to stand (chapter 82 and chapter 142, supra), but also as amending that legislation so that funds validly allocated to the city at the time the laws were passed are now, contrary to such laws, allocated to a special fund of the state. The power so to do, as already stated, may be assumed. Does it clearly appear that such was intended, considering the expressed purpose of the amendment set forth in section 1 thereof: "A fund to be known as the Old Age Pension Fund is hereby created and established *in the Treasury of the State of Colorado?*" In answer to the interrogatory of the Governor, "Are the provisions of said amendment *or any thereof,* self executing?", this court said: "The answer is: It is self-executing as to the establishment of the specified fund; *otherwise not;* save that the fund so cre-

ated becomes the fund out of which payments will be made under the laws heretofore in force until said amendment No. 4 is otherwise effectuated by legislation." *In Re Interrogatories,* 99 Colo. 591, 65 P. (2d) 7. If the court adheres to the view expressed by the majority in answer to the foregoing interrogatory, how can it now say that the amendment is self executing— self executing even to the extent, if the opinion and specially concurring opinion are correct, of amending chapters 82 and 142, supra, by implication, and making a new allotment of the monies received by the cities for license fees under those acts to a special fund of the state? If self executing as to the establishment of the fund and "otherwise not," it was authority for the state treasurer to set up the fund and to place therein all monies in his hands or that might come into his hands as the custodian of the state funds. It could not be authority *without enabling legislation,* to take funds then otherwise lawfully allocated to the cities and transfer them to the state without at the same time being otherwise self executing.

The answer as to what license fees were allocated by article XXIV must be found from an examination of the article itself. That article creates and establishes the Old Age Pension fund "in the Treasury of the State of Colorado." Having established the fund it sets aside and allocates to that fund sums and money as follows: "Beginning January 1, 1937, eighty-five per cent of all net revenue *accrued* or *accruing, received* or *receivable* from taxes of whatever kind upon all malt, vinous, or spirituous liquor, both intoxicating and nonintoxicating and *license fees connected therewith."* Under chapters 82 and 142, supra, there were at the time this article XXIV was enacted license fees *"accrued* and *accruing"* to the state and the cities and *"received and receivable"* by the state and the cities. The fees referred to as accrued and accruing, received and receivable, must have been those that have accrued to, have been received by,

584

and that are accruing to, and are receivable by, one or the other or both of these governmental entities. It would seem reasonable, since the fund is established in the *state treasury,* that the reference is to those that have accrued and have been received by, and are accruing to and are receivable by, the *state.* This would follow from the fact of the amendment being self executing as to the establishment of the fund and not otherwise. The following subsection (c) lends weight to this construction because it allocated to the fund unexpended money "as of January 1, 1937," "in any fund of the State of Colorado, or political subdivision thereof," "which prior to said date *has been allocated* to the payment of an old age pension." It is to be noted that it does not say unexpended money which is *herein allocated* to the payment of an old age pension. The license fees received by the cities had not been so allocated. Furthermore, the prohibition in section 5 of article XXIV extends only to the extent of denying the right to the General Assembly to repeal laws "providing revenue for the old age pension fund." Under chapters 82 and 142, supra, in so far as city licenses are concerned, no revenue is or ever was provided for the old age pension fund and there is therefore no prohibition against the repeal of those provisions of these laws.

It is to be noted further that if section 2, subsection (b), is given the construction contended for by the state, and license fees collected by the cities constitute a part of the old age pension fund, that there can be logically no reason for not holding that the same section allocates to the same fund eighty-five per cent of all ad valorem taxes upon stocks of liquor whether said taxes have accrued or are accruing, have been received or are receivable by the state, the counties, school districts, educational institutions, or any other subordinate branches of government. If it be held that article XXIV seizes the license fees which the city collects and under the laws as enacted was permitted to retain, I am unable to escape

the conclusion that subsection (b) will likewise seize the ad valorem taxes on liquor payable to the subordinate branches of our government as well as such taxes as are payable to the state. If subsection (b) is so construed as to taxes on liquor it will repeal by implication section 11 of article X limiting the rate of taxation on property for state purposes to four mills on each dollar of valuation, for the old age pension fund is for the payment of pensions, now clearly a state purpose. It will repeal in part also by implication section 10 of article X which provides that all corporations shall be subject to taxation for state, county, school, municipal and other purposes on the real and personal property owned by them within the limits of the authority levying the tax in so far as any stock of liquor within any of such governmental subdivisions is owned by a corporation.

The power to do the things by constitutional amendment that the state contends was done may be conceded. That it was intended by the people that the amendment held to be self executing only as to the establishment of the fund should be given a construction, the ramifications of which require such an extensive and radical invasion of our system of raising and allocating revenues may well be questioned and particularly in view of the fact that a reasonable and logical construction may be placed upon the amendment which does not require such an invasion. A restriction in the state Constitution is a limitation upon the otherwise plenary power of the people to act in the matter through their reserved power of initiating laws or through their representatives in the legislature, and a decent respect for such prerogative requires that we do not extend a restriction beyond its clear terms and that all doubts as to the extent of a restriction be resolved in favor of the people having retained rather than having surrendered power.

I am authorized to state that Mr. Justice Knous and Mr. Justice Burke concur with me in the views herein expressed.