Submitted on briefs August 18, affirmed August 29, 1921.

# TICHNER *v.* PORTLAND ET AL.

(200 Pac. 466.)

**Statutes—That There is Only One County to Which Law is Applicable Does not Make It "Special or Local Legislation."**

1. The fact that there is only one county in the state containing the required number of inhabitants making it amenable to a certain act does not render such act "special or local legislation," within Section 23, Article IV, Constitution, prohibiting the enactment of special or local laws in enumerated cases.

**Constitutional Law—Statute must be Clearly and Palpably Unconstitutional to be so Held.**

2. A statute will not be held unconstitutional, unless its violation of the fundamental law is clear and palpable.

**Statutes—Providing for Budget in Counties having Population of More Than 100,000 Inhabitants Held not Special or Local Legislation.**

3. Tax Supervising and Conservation Commission Act of February 23, 1921, providing for a budget for taxation purposes for counties having a population of 100,000 or more inhabitants, without requiring estimates and other similar data to be published as required of other counties, school, road and irrigation districts, and other public or *quasi*-public corporations by Local Budget Law of February 18, 1921, *held* not special or local legislation, within Section 23, subdivision 1, Article IV, Constitution, prohibiting the enactment of special or local laws for the assessment and collection of taxes for state, county or road purposes, in view of the difference between the fiscal concerns of a county having such a population and the other more thinly populated counties.

From Multnomah: JOHN McCOURT, Judge.

In Banc.

The legislative assembly of 1921 passed an act known as the "Local Budget Law," which was approved February 18th of that year. At the same session it also passed an act known as the "Tax Supervising and Conservation Commission Act," which was approved February 23d. Both acts contemplate the

---

1. What are "local" statutes, see notes in 23 Am. Dec. 543; 1 Am. St. Rep. 903; 4 Ann. Cas. 659.

formation of a budget for the purposes of taxation in municipalities. The former by its terms, applies to all counties, cities, towns, ports, school districts, union high school districts, road districts, irrigation districts, water districts, dock commissions and all other public or *quasi*-public corporations that have power to levy a tax upon property in the state. The latter is adapted only to such institutions in

"Each county in this state which now has or shall hereafter attain a population of one hundred thousand or more inhabitants."

The Local Budget Law contemplates the making and publishing of estimates by each municipal corporation mentioned together with the original estimate sheets of each officer and department from which the estimates themselves have been compiled. The levying board in each municipality is required to appoint from the qualified electors and freeholders of the municipality individuals equal in number to the personnel of the levying board itself to act with the board in considering the estimates and compiling the budget. At the hearing upon the budget, all the taxpayers are authorized to be present and discuss it with the board. In the levy of taxes in such cases the board is limited to the estimate plus 10 per cent thereof unless a greater levy is authorized by a direct vote of the people of the municipality at a meeting duly and regularly called. Under the Tax Supervising and Conservation Commission Act, no publication of estimates and other data of that nature is required. The commissioners are appointed by the Governor. To them, each municipality in the county as well as the county itself is required to submit its estimates. The commission considers the estimates, giving to each muni-

cipality or any person interested, the right to be heard prior to the actual levy of any tax. While the commission does not itself, in the first instance, levy the tax, it fixes the amount to be levied by each municipality and directs the levying board thereof to make the levy accordingly so that the duty of the latter board is merely ministerial. In default of the levy by the municipal board in accordance with the direction of the commission, the commission itself may make the levy.

The present suit is brought by plaintiff as a freeholder and taxpayer within the limits of the City of Portland, to restrain the officers of the city from incurring the expense of publication of the estimates and the detail sheets from which they are to be compiled, claiming that thereby his burden of taxation would be unnecessarily and unlawfully increased. He avers that the defendants are proceeding to expend a large amount of money unnecessarily, and are threatening and intending to itemize to the utmost detail all the supplies and expenses required for the ensuing fiscal year, thereby incurring much useless expense. In brief, the substance of this complaint is that the officials of the City of Portland are about to operate under the Local Budget Law, so called, in preparing and publishing the estimates for the budget, whereas they are properly governed only by the Tax Supervising and Conservation Commission Act.

The Circuit Court overruled a general demurrer to the complaint and entered a decree to the effect that all expenditures to be made of money derived wholly or in part by public taxation should be listed and itemized in the budget, but such things as local improvements to be paid for by assessments of abutting

property and not by general public taxation should not be included in the estimate. The defendants appeal from substantially the entire decree. The plaintiff also appealed from part of the decree, contending that the court erred in holding that the water bureau of the city and other self-sustaining bureaus and special tax levies and street and sewer improvements are excluded from the operation of the act except where the cost of such improvements is to be paid in whole or in part from the funds raised by taxation.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Frank S. Grant* and *Mr. Lyman E. Latourette.*

For respondent there was a brief over the names of *Mr. Walter H. Evans* and *Mr. Wm. H. Hallam.*

*Mr. Fred W. Mulkey,* of Counsel.

BURNETT, C. J.—The question presented for decision is to be determined by ascertaining whether or not the Tax Supervising and Conservation Commission Act is a general law or a special or local law applying as it purports

"to each county in this state which now has or shall hereafter attain a population of one hundred thousand or more inhabitants."

The defendants contend that the act in question is prohibited by subdivision 10 of Section 23 in Article IV of the Oregon Constitution, which reads thus:

"The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say * * 10. For the assessment and collection of taxes for state, county, township or road purposes."

1. It is to be observed at the outset that the act is made to apply to each county in the state which now has or shall hereafter attain the prescribed population. It is admitted in argument that Multnomah County is the only county in the state at present containing the required number of inhabitants to make it amenable to the act. That fact alone does not determine the issue. In *Wheeler* v. *Philadelphia*, 77 Pa. St. 338, the court held directly that a classification of cities according to their population is constitutional, under an organic law that prohibited special or local legislation, and this too although the City of Philadelphia was the only city in the first class. *Kilgore* v. *Magee*, 85 Pa. St. 401, has a syllabus which reads thus:

"The legislature has power to classify cities according to the number of their population and the fact that some of these classes contain each but one city does not make such classification invalid or bring it within the constitutional provision of Section 7 of Article III of the Constitution which forbids local or special legislation."

In *Denman* v. *Broderick*, 111 Cal. 96 (43 Pac. 516), after condemning the classification involved in that case, the court held that if in other respects it had complied with the Constitution, the fact that a certain class contained only one or two municipalities would not invalidate the scheme. In this state, that point is settled by the case of *Ladd* v. *Holmes*, 40 Or. 167 (66 Pac. 714, 91 Am. St. Rep. 457), where it was decided that a primary election law applicable to cities having a population of ten thousand or more was not local or special merely because the City of Portland was at that time the only one in the state having the required population.

The case of *State ex rel.* v. *Swigert,* 59 Or. 132 (116 Pac. 440), is to be distinguished on this point.   There, an attempt was made by the legislative assembly to provide for the appointment of the commissioners of any port which contained within its boundaries a population of more than 100,000 as shown by the last federal census.   In substance, the court there ruled that this language was restrictive and applied only to such cities as at that time contained that number of inhabitants and excluded all others that might thereafter attain that population.   In other words, the effect of the language was to describe only the port of Portland without reference to any other city either then or thereafter existing which possessed the same characteristics.   The clear inference to be drawn from the language of the opinion, however, is that if its legislation had provided for the admission of other cities to that class as they became qualified, the act in that respect would have been valid.

The most important question to be considered is whether the classification is based upon any real difference between Multnomah County and other counties of the state so as to justify peculiar procedure in matters of taxation in the former.   As said by Mr. Justice Wolverton in *Ladd* v. *Holmes, supra;*

"The greater difficulty centers about the classification.   It may not be arbitrary, and requires something more than a mere designation by such characteristics as will serve to classify.   The mark of distinction must be something of substance, some attendant or inherent peculiarity calling for legislation suggested by natural reason of different character to subserve the rightful demands of governmental needs. So that, when objects and places become the subject of legislative action, and it sought to include some and

exclude others, the inquiry should be whether the distinctive characteristics upon which it is proposed to found different treatment are such as in the nature of things will denote in some reasonable degree a practical and real basis for discrimination.''

2, 3. To the same effect is *Kellaher* v. *City of Portland,* 57 Or. 575 (110 Pac. 492, 112 Pac. 1076).

We remember the principle that the judiciary will not condemn as unconstitutional any act of the legislative assembly unless its violation of the fundamental law is clear and palpable. With this canon of interpretation in mind, we will consider the act in question. It has long been the policy of the state to collect all taxes through the county tax collector. For several years it has been required that each municipality in a county shall make proper report of its levy to the county authorities, after which the impost is collected by the county tax collector. In rural communities where there are comparatively few subordinate municipalities, such a scheme is workable in practice and it is within the legislative discretion to leave to each petty municipality the exclusive power to levy its own taxes without supervision and to report them to the county authorities. The plan is not complicated under such circumstances and is easily carried out. Quite a different situation is presented in a thickly populated county like Multnomah including, as it does, the metropolis of the state, the City of Portland. In the latter county are involved numerous school districts, the port of Portland, the various commissions and the intricate machinery of the government of a great city. It is the difference of making the coat of a lad fit a full-grown man. It is desirable, therefore, that the estimates for taxation pass the review of an independent board before being

finally lodged with the collecting officer in the form of levies.

In the nature of things, it is impossible to draw a line of mathematical demarcation. It is enough to say that there is a manifest difference between the fiscal concerns of a community like that of Multnomah County and that of any one of the thinly populated rural counties of the state. This is a sufficient ground of distinction to authorize the lawmakers to provide legislation for any county which now has a given population, or which may hereafter attain that mark. The legislation applies equally to all within the class. That class is open to all who may qualify for it. The deduction is that the legislation is general and not special.

Much is claimed by the defendants for the utterances of Mr. Justice Ramsey in *Branch* v. *Albee,* 71 Or. 188, 202 (142 Pac. 598), by which he undertook to show that the act there in question applied only to the City of Portland and was so intended. The language of the opinion in that case was employed in support of the doctrine that not even by a general law could the legislative assembly in any manner affect the charters of cities or towns. That dogma has since then been discarded by this court in *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498), *Lovejoy* v. *Portland,* 95 Or. 459 (188 Pac. 207), *Hillsboro* v. *Public Service Com.,* 97 Or. 320 (187 Pac. 617, 192 Pac. 390), and other cases and is no longer controlling. By its terms the statute involved in *Branch* v. *Albee* was made applicable only to cities in the state having more than 50,000 inhabitants. The decision was to the effect that it was an attempt to amend the charter of Portland and hence was contrary to Section 2 of

Article XI of the state Constitution forbidding the legislative assembly to

"enact, amend or repeal any charter or act of incorporation for any municipality, city or town."

Whether the enactment was a general or special law was not discussed. For these reasons that case is not in point in the present contention.

One of the principal cases cited by the defendants was *State* v. *Jones,* 66 Ohio St. 453 (64 N. E. 424, 90 Am. St. Rep. 592). In that case the legislative assembly classified and subclassified cities and towns to such an extent that it became apparent to the court that the enactments evinced

"an intention that municipalities having substantially the same condition and characters shall not enter and remain in the same class"

and hence were condemned by the constitutional provision that

"the general assembly shall pass no special act conferring corporate powers."

In other words, the court reached the conclusion that the legislation was a gerrymandering abuse of the power of classification. The underlying reason was that the classification bore no logical relation to the actual condition of affairs. A note to this case reported in 90 Am. St. Rep. points out and supports by ample authority the principle that

"a classification on the basis of population in a statute relating to the machinery and powers of municipalities is legitimate if such population bears a reasonable relation to the necessities of the municipalities. Classification in such cases is necessarily committed to the judgment of the legislature and its judgment must prevail unless the classification is plainly illusory or applied illusively. The fact that a statute

is applicable to the conditions existing in a single city does not necessarily render it special legislation.''

In *Wheeler* v. *Philadelphia, supra,* the court discussed the argument that the act was void although general in its terms because in very truth it applied only to the City of Philadelphia saying:

''It is true the only city in the state at the present time containing a population of three hundred thousand is the City of Philadelphia. It is also true that the City of Pittsburg is rapidly approaching that number, if it has not already reached it, by recent enlargement of its territory. Legislation is intended not only to meet the wants of the present but to provide for the future. It deals not with the past, but in theory, at least, anticipates the needs of a state healthy with a vigorous development. It is intended to be permanent. At no distant day Pittsburg will probably become a city of the first class and Scranton or others of the rapidly growing interior towns will take the place of the cities of the second class. In the meantime, is a classification of the cities of the first class bad because Philadelphia is the only one of the class? We think not. Classification does not depend upon numbers * * If the classification of cities is in violation of the constitution, it follows of necessity that Philadelphia as a city of the first class must be denied the legislation necessary to its present prosperity and future development, or that the small inland cities must be burdened with legislation wholly unsuited to their needs. For if the constitution means what the complainants aver that it does, Philadelphia can have no legislation that is not common to all other cities of the state and for this there is absolutely no remedy but a change in the organic law itself.''

It is plain, therefore, that the fiscal needs of a thickly settled community like Multnomah County, complicated as they are, are sufficient to differentiate

it and those which may hereafter come into the same class from other portions of the state, so that a legitimate ground of classification exists not merely on account of technical rules, but upon the substance of the situation. With the great number of sources from which taxation may originate in such a community, it is eminently proper that there should be a supervising body to prevent overlapping of the various taxes and to prevent .them from amounting in the aggregate to an oppressive burden upon the people. In so large a community the discussion of popular assemblies scattered .over the county would very likely end in talk and inaction. The commission composed of three members who have at hand all the data necessary to consider is evidently more efficient than any number of public meetings. The validity of the classification and the wisdom of its application is apparent and serve to exonerate it from the charge of special or local legislation. The fact that, as required by the statute, the commission has in its custody all the original data and estimates necessary to a full understanding of the tax situation in good reason obviates the necessity of publishing them and furnishes reasonable ground for the omission of the attendant expense.

The Circuit. Court was right in applying the law to all activities involving the expenditure of money raised by public taxation. It may be that at present some of the bureaus of the city government are self-sustaining. There is nothing to show that this situation will be perpetual and hence it is proper that they alike should be included in the operation of the act.

As said in *State* v. *Sturgess,* 10 Or. 58, the several acts of the legislative assembly should be viewed to-

gether as one enactment and both should be construed to stand if possible. Briefly speaking, the situation is one tantamount to where the Local Budget Act would contain within itself a proviso in the terms of the Supervising and Conservation Commission Act.

To conclude: The legislative assembly has rightly prescribed a method of procedure applicable to all counties whether many or few, or only one, containing 100,000 or more inhabitants whether now or hereafter, and this is a general law exclusive of all other statutes in the cases to which it is applicable.

It follows that the decree of the Circuit Court is affirmed and neither party will recover costs or disbursements in this court.      AFFIRMED.