Argued May 20; affirmed July 7; rehearing denied
September 10, 1936

# CITY OF PORTLAND *v.* WELCH

(59 P. (2d) 228)

*Frank S. Sever,* Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for appellants H. U. Welch, A. A. Bailey, Martin T. Pratt, R. T. Cox, Mason L. Bingham and C. W. Weatherly.

*Robert L. Sabin, Jr.,* of Portland, for appellant H. U. Welch, taxpayer.

*Carl E. Davidson,* Assistant Attorney-General (I. H. Van Winkle, Attorney-General, on brief), for appellant I. H. Van Winkle.

*Frank S. Grant,* City Attorney, and *L. E. Latourette,* Deputy City Attorney, both of Portland, for respondent City of Portland.

*Chris Bosen,* of Portland (Green, Tanner & Boesen, of Portland, on the brief), for interveners F. G. Gleichman and Gerald Royer.

BELT, J. This suit is prosecuted under and by virtue of the Declaratory Judgment Act, challenging the constitutionality of the Tax Supervising and Conservation Commission Act (Chapter 208, Oregon Laws 1921, Oregon Code 1930, §§ 69-1201 to 69-1217, inclusive), and for the purpose of obtaining the proper construction thereof in the event that it is held valid.

The purpose and object of the act is thus expressed in the title thereof, viz:

"Providing for the supervision, regulation, limitation and levy of taxes of counties having a population of more than 100,000, and of all municipal and quasi municipal corporations therein having power to levy taxes, by a commission created for such purpose and making and keeping proper records of taxes and indebtedness of such counties and municipalities; * * * ."

The act embraces:
"* * * the county, and any city, town, port, school district, union high school district, road district, irrigation district, water district, dock commission, and all other public and quasi public municipal corporations that have power to levy taxes within the county." Section 69-1202 (d), Oregon Code 1930.

The three tax commissioners are appointed by the governor. It is the duty of the commission to compile statistics and other information concerning the bonded or other indebtedness of any municipality or quasi municipality within the county and to keep a record of expenditures of such municipalities. Under the provisions of the act all tax levying boards within the county are required to submit to the commission detailed estimates in their annual budgets, together with an estimate of the probable receipts of the municipal corporation "from all other sources than direct tax levy and bond issues during the fiscal year for which the budget has been prepared". The commission is directed to conduct a hearing upon the budget submitted, at which time any tax levying board is entitled to be heard. The tax commission is authorized, after hearing on the budget, to "approve, reject, or reduce the same or any items therein". When any changes have been made in the budget, the commission is directed to report in writing to the levying boards the results of its "findings, conclusions, and directions". Thereafter, by formal order the tax commission directs the several levying boards in the county to levy a tax in accordance with its findings and conclusions for the purpose of meeting the necessary expenditures *"which in the judgment of said commission should be made for the ensuing year"*. The decision of the commission *"as to the amount of tax"* to be levied by each municipal corporation "shall be *conclusive and binding* upon such municipal corporation and the levying boards and officers thereof * * *"*. (Italics ours.) Upon receipt of the order of the commission it is the duty of the several levying boards to "proceed forthwith to levy such tax" and if they fail so to do, the commission is authorized to direct

the assessor to extend upon the tax roll the tax levy determined by the commission. Section 10 of the act provides penalties for a violation of the act. Section 14 provides that the tax commissioners shall take an oath that they, among other things, "will endeavor to secure economical expenditure of public funds sufficient in amount to afford efficient and economical administration of government in the county * * *". No provision is made for an appeal from the decision of the commission as to the amount of tax to be levied.

The original Tax Supervising and Conservation Commission Act was passed by the legislature in 1919 (chapter 375, Oregon Laws 1919) but, under its express terms, the tax commission had only "advisory jurisdiction" over tax levying boards. It is observed that the present act of 1921 is far more drastic in its provisions and is plainly couched in mandatory language.

The City of Portland challenged the constitutionality of the act in 1921, asserting it was a local law as applied to cities and in violation of Article XI, § 2 of the constitution of Oregon (Home Rule Amendment), but this court sustained the validity of the act (*Tichner v. City of Portland,* 101 Or. 294 (200 P. 466)). Thereafter, the city, during a lapse of many years, submitted to the provisions of the act and apparently worked in harmony with the tax commission.

The present controversy arose when the tax commission made the following changes in the 1936 budget as submitted by the city of Portland: (1) Reduced various amounts for salaries of city officials. This reduction was substantially on a 12½ percentage basis and amounted in the aggregate to $400,827.20. The city, by ordinance, had recently increased salaries of

employees in various departments. It was the intention of the commission to restore the salaries to what they were prior to the enactment of the ordinance. (2) Rejected in its entirety an item of $77,000 for widening 82d Avenue in the city of Portland. The commission in its report relative to the elimination of this item from the budget stated: "The amount of the city's liability has not been fixed either by a vote of the people or by the courts. This commission believes that there is sufficient money in the emergency fund together with possible transfers from other funds, to make payment on any claim that may be definitely determined during 1936." The record discloses, however, that certain property had been taken for street widening purposes although no condemnation proceedings were instituted. Property owners instituted actions for damages. The city estimated that the above amount would be necessary to satisfy such claims. (3) Reduced an item for sinking funds on bonded indebtedness. The city specified the sum of $902,000 as the amount needed, but the commission allowed only $875,000. (4) Reduced an item for paying interest on bonded indebtedness. The city estimated it would need $924,055.38 for such purpose. The commission allowed $766,608.72. Relative to these last two items the commission stated in its report: "All requests for allowances for delinquency and discounts were not approved because of the belief, based on receipts to date, that the 1936 tax collection, current and delinquent, would exceed the levies for that year and because the total of delinquent taxes outstanding exceed the current obligations by more than two million dollars."

After the tax commission refused to approve the budget as submitted by the city, an ordinance was en-

acted levying a tax sufficient to cover the above-mentioned items in controversy and also other items in the budget upon which there had been no disagreement. The assessor, however, refused to extend the levy as certified by the city, but did so in accordance with the findings and conclusions of the tax commission. Thereupon this proceeding was commenced. Gleichman and Royer, employees of the City of Portland, had previously filed a suit challenging the constitutionality of the act, but when the instant suit was commenced they were permitted to intervene.

The circuit court held the statute creating the tax commission unconstitutional "in so far as it gives said commission mandatory authority to levy taxes, cut out or reduce items in cases where the items in a budget will not cause a tax in excess of the limitations provided by law". The decree was based upon the legal proposition that the legislature could not delegate to an appointive commission the power to levy a tax and that consequently "the action of such commission upon such budget is only advisory". In answer to specific questions propounded by the city, the court held that the commission had no authority to so revise the budget and that the levy made by the city was legal. At the conclusion of the trial it was stipulated, however, by the city that it would forego the additional levy for the current year in order to avoid confusion as the tax rolls were already extended and ready for delivery to the sheriff.

■■ The city again earnestly urges upon this court, notwithstanding the adverse decision of *Tichner v. City of Portland,* supra, that the act under consideration is a local law as applied to cities and therefore transcends

Article XI, § 2, of the constitution of Oregon, which, so far as material herein, provides:

"The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon."

It is, indeed, a very important question and, regardless of the former decision and the lapse of time since it was rendered—during which period the City of Portland and other municipalities in Multnomah county have operated under the Tax Supervising and Conservation Commission Act—the court will again consider the matter as no question should ever be deemed settled until it is settled right. If the act is unconstitutional today for the reasons stated it was unconstitutional 15 years ago, and the court should so declare. Pride of opinion should never deter a court from confession of error. As stated by an ancient law-giver: "If today thou seest fit to judge differently from yesterday, do not hesitate to follow the truth as thou seest it; for truth is eternal, and it is better to return to the true than to persist in the false". However, it should ever be kept in mind that no court is ever warranted in declaring a legislative enactment void unless it clearly and palpably transcends the fundamental law. A legislative enactment is entitled to the benefit of every reasonable intendment.

Does this act as applied to cities within Multnomah county deprive the people of such municipalities of the right of local self government as guaranteed to them under the Home Rule Amendment to the constitution (Article XI, § 2)? The object and purpose of such

constitutional provision is to prevent legislative interference and intermeddling with purely municipal affairs. Prior to the adoption of this constitutional amendment in 1906, municipal charters were granted by the legislature and often included provisions wholly at variance with the will of the people governed thereby. It was to remedy such legislative interference that the Home Rule Amendment was adopted. At the same time Article IV, § 1a, was adopted, reserving to the legal voters of every municipality and district "the initiative and referendum powers" as to all "local, special, and municipal legislation". Pursuant to these Home Rule Amendments the legal voters of the City of Portland adopted their charter. Hence, we conclude that the authority of the city to legislate relative to matters germane to purely municipal affairs has been derived not from the legislature but from the constitution itself. If that is a sound conclusion, can it be true that the legislature, under the guise of a general law, can interfere with the exercise of such right? We take it to be fundamental that the legislature could not do so through the enactment of a special law. Hence, what the legislature can not do directly it can not do through indirection.

█ It does not follow, however, that because the City of Portland has a home rule charter it is not subject to legislative enactments pertaining to the general welfare of the state. The city is still a subordinate governmental agency of the state. While there was some confusion and uncertainty in the earlier decisions of this court in construing the Home Rule Amendments it is now well established as said in *Burton v. Gibbons,* 148 Or. 370 (36 P. (2d) 786), wherein numerous authorities from this jurisdiction are cited, that "the power of

the legislature to enact a general law applicable alike to all cities is paramount and supreme over any conflicting charter provision or ordinance of any municipality, city or town''. In other words, there can not be a ''state within a state''.

■ While a general law supersedes a municipal charter or ordinance in conflict therewith, it should be borne in mind that the subject matter of the general legislative enactment must pertain to those things of general concern to the people of the state. A law general in form can not, under the constitution, deprive cities of the right to legislate on purely local affairs germane to the purposes for which the city was incorporated.

Since the late Chief Justice McBRIDE was one of the principal framers of the Home Rule Amendments (Article XI, § 2, and Article IV, § 1a) he undoubtedly knew the interpretation intended to be placed upon them. In *Pearce v. Roseburg*, 77 Or. 195 (150 P. 855), he said that he considered it ''settled in this state that as to matters purely municipal the state legislature can not intermeddle by either general or special legislation, although as to matters affecting the people generally the power of the legislature is still unlimited''. While it is true that the result reached in this case was in keeping with *Kalich v. Knapp*, 73 Or. 558 (142 P. 594, 145 P. 22, Ann. Cas. 1916 E, 1051), which was later overruled, the principal above announced has never been repudiated by this court. It is as wholesome today as it was 20 years ago when it was first declared as it undoubtedly is in keeping with the purpose and object of the Home Rule Amendments. Such interpretation perpetuates local self-government, yet does not disturb the sovereignty of the state.

Mr. Justice BEAN, speaking for the court in the comparatively recent case of *In re Boalt,* 123 Or. 1 (260 P. 1004), thus commented upon the power of the legislature to supersede by general laws municipal charters or ordinances in conflict therewith:

"It is in consonance with our whole scheme of government that the legislature or the people of the whole state may enact a general law governing the exercise of municipal authority in matters not strictly local or municipal, but pertaining in part to the general welfare of the state, or the exercise of sovereign authority."

In McQuillan Municipal Corporations (2d Ed.), § 93, it is said:

"The purpose (referring to the home rule amendments) was to give local communities full power in matters of local concern, that is, in those matters which peculiarly affected the inhabitants of the locality, not in common with the inhabitants of the whole state. Those matters which affected all of the inhabitants of the state were viewed as state matters, and therefore subject to state control, but those things which did not concern inhabitants of the state other than those residing in the particular community, were sought to be differentiated as local concerns, which under these constitutional provisions were to be regarded as exclusively matters of local self-government, or home rule for control alone by the local inhabitants in any manner which seemed to them desirable, not inconsistent with the general laws and policy of the state."

 Public matters concerning the people of the state at large in common with the inhabitants of a given community are clearly within the sovereign jurisdiction of the state to administer, regulate, or control. On the other hand there are municipal affairs which concern alone the inhabitants of a particular locality and pertain purely to its needs and interests as distinguished

from those of the state at large: McQuillan Municipal Corporation (2d Ed.) §§ 195, 196. It is sometimes difficult, however, to distinguish between state affairs and essentially municipal affairs. It is particularly so when pertaining to matters of local taxation.

 In our opinion, local taxation and indebtedness under certain circumstances may become a matter of concern to the state. Indeed, the constitution itself imposes a tax limitation upon municipalities and taxing districts (Article XI, § 11, Constitution of Oregon): See *Burton v. Gibbons*, supra. Hence the legislature may, by a general law, limit the levying of taxes or incurrence of indebtedness by municipalities: McQuillan Municipal Corporations (2d Ed.) § 2366. The legislature, however, has not seen fit to fix a limitation upon the amount of taxes a city may levy. We take it, therefore, that a tax levy by a municipality, germane to the purposes for which it was incorporated, not in excess of a limitation fixed by the constitution or by a general law, is a matter of local concern. A general legislative enactment limiting the indebtedness or the tax levy of a subordinate governmental agency is a far cry from one which purports to authorize an appointive commission to "approve, reject, or reduce the budget or any items therein", even though the city has not exceeded any limitation fixed by the constitution or statute. If a city has not violated any constitutional or statutory limitation of indebtedness or taxation, of what concern is it to the people of the state at large whether it levies a tax to pay its city officials, repair fire hose, build a swimming pool, buy stamps, or improve a public park? Are these not matters of purely local concern? If such items of expenditure can be eliminated or reduced, in

accordance with the judgment of members of a non-elective commission, then the right of local self government under the Home Rule Amendments of the constitution has become a hollow mockery. The officials elected by the people to determine such matters of governmental policy would, under such an act, become nonentities.

The great majority of the home rule states have accepted the rule that general laws pertaining to purely municipal affairs as distinguished from state affairs—those in which the interests of the state dominate—do not supersede the charters or ordinances of municipalities in conflict therewith: *Bricker v. Banks*, 98 Cal. App. 87 (276 P. 399); *Blake v. City of Eureka*, 201 Cal. 643 (258 P. 945); *City and County of Denver v. Bossie*, 83 Colo. 329 (266 P. 214); *Hinz v. Hubbard*, 95 Okla. 164 (216 P. 440); *State ex rel. Ekern v. Milwaukee*, 190 Wis. 633 (209 N. W. 860); *Mulcahy v. City of Akron*, 27 Ohio App. 442 (161 N. E. 542); *Consumers' Coal Co. v. City of Lincoln*, 109 Neb. 51 (189 N. W. 643); *Northern Pacific Ry. Co. v. City of Duluth*, 153 Minn. 122 (189 N. W. 937); *Community Natural Gas Co. v. Northern Texas U. Co.* (Tex. Civ. App.) 13 S. W. (2d) 184; 43 C. J. 176, 178, 179.

■ We conclude that the Tax Commission Act—assuming it is a general law as applied to cities in Multnomah county—transcends Article XI, § 2, of the constitution of Oregon, in so far as it purports to authorize the commission to eliminate or reduce items in a budget when the city submitting the same has not gone beyond any constitutional or statutory limitation of indebtedness or taxation.

■ What has been said thus far has been on the assumption that the Tax Commission Act is a general

law. We think, however, that, as applied to cities in Multnomah county it is a local or special law. There may be a reasonable basis for classification as to counties having a population in excess of 100,000, but does it follow ipso facto that all cities within such territory, regardless of population, valuation of property, or indebtedness, are thereby legally classified? At the time this law was enacted there were four incorporated cities within Multnomah county having population as follows: City of Portland, 258,288; city of Gresham, 1,103; city of Troutdale, 191; and the city of Fairview, 184. The mere fact that any one of the above cities is located in Multnomah county certainly affords no reasonable basis for classification. Indeed, it is classification "run wild". If this is a valid act as applied to cities, Gresham is subjected to the drastic provisions of the act, whereas a city of approximately the same population which is across the county boundary line does not and comes under the Local Budget Act applicable to all cities in counties of less than a 100,000 population. If it be said that the basis of classification is that Multnomah county has more tax levying boards than other counties and hence need of closer supervision and control in reference to tax levies, it might be said with equal logic that all cities in western Oregon should be subjected to such an act, whereas cities in eastern Oregon—the more sparsely populated section of the state—should not. If charters and ordinances of cities can be amended or repealed by legislation based upon such flimsy and unreasonable classification the right of local self government as guaranteed by the constitution may soon become a nullity.

In 19 R. C. L. 743, it is said:

"Although classification by population is usually accepted as permissible, a classification of cities, towns

and villages by population can not be arbitrarily adopted as a ground or reason for investing some of them with powers denied or not granted to others, if, though there be a difference in population, there is no difference of situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and objects to be attained by the statute, or if it is apparent from the minuteness of the subdivision into classes that it is merely a subterfuge to evade the constitutional provision."

Authorities are cited in *Tichner v. Portland,* supra, to the effect that the legislature has power to classify cities according to their population but we submit that, under the act in question, no such classification has been made. As stated in *Ladd v. Holmes,* 40 Or. 167 (66 P. 714, 91 Am. St. Rep. 457):

"* * * when objects and places become the subject of legislative action, and it is sought to include some and exclude others, the inquiry should be whether the distinctive characteristics upon which it is proposed to found different treatment are such as in the nature of things will denote in some reasonable degree a practical and real basis for discrimination."

We are constrained to hold that *Tichner v. Portland,* supra, must be overruled and that the Tax Commission Act, as applied to cities within Multnomah county, transcends Article XI, § 2, of the constitution of Oregon.

The next serious objection to the act is that the authority thereby vested in the tax commission to reject or reduce items in budgets of tax levying bodies within the county is an unconstitutional delegation of legislative power.

At this juncture it may be well to consider briefly the operation of this law upon the governmental policy

of municipalities. The city of Portland has a charter initiated by vote of the people under and by virtue of the organic law. The charter among other things specifies the salary of the mayor and the city commissioners. It also authorizes the council to fix by ordinance the salaries of subordinate officials in the various departments of the city government. In the instant case we have the anomalous situation, to say the least, of an appointive commission making salary reductions in conflict with the fundamental law of the city and of an ordinance enacted pursuant thereto. Legal obligations of the city to pay interest on bonded indebtedness are held for naught. The will of the common council to provide funds for the widening of a street is thwarted by the rejection of an item in the budget included therein for such purpose. We may well be concerned, however, not with what the commission has done in particular instances but rather with what it is authorized to do. In this connection we impute no ulterior motives to the high-minded citizens who have served on this commission without compensation for many years and who have made a good record for economy. The question involved is of such importance that whether, in fact, the law has been administered efficiently is of secondary importance. The thing uppermost in the mind of the court is whether such legislation is foreign to the purpose and spirit of our constitutional system of government. Has there been an abdication of sovereignty? Does such act purport to create a commission vested with authority to exercise an uncontrolled discretion in determining the governmental policy of a city that has derived its power to act not from the legislature but from the constitution itself?

■ Relative to the question as to whether there has been an unlawful delegation of legislative power, we think its answer hinges upon whether the act provides any definite standard for the guidance of the commission in carrying out the policy of the state in regulating or controlling the levying of local taxation. Under the act the commission has no power to initiate a tax, nor can it add any item not included in the budget, but it nevertheless does determine the amount of the tax not in excess of the levy proposed by the municipality. As before stated, its power extends to the rejection or reduction of items in the budget regardless of whether the city has exceeded any constitutional or statutory limitation in reference to the levying of taxes or incurrence of indebtedness. If the commission does not approve the tax as proposed by the city, and the latter fails to comply with its findings and conclusions, the commission is authorized to direct the levy of the tax.

■ We recognize, as stated in *Livesay v. De Armond,* 131 Or. 563 (284 P. 166, 68 A. L. R. 422), that "The mere fact that a subordinate body is granted discretion in the exercise of a power conferred by a law does not necessarily demonstrate that the discretion amounts to the use of a legislative power". We assume it to be a well-settled rule, however, that when the legislature does confer upon an administrative board the power to exercise discretion in carrying out the mandate of the state, there must be some definite and reasonable rule for its guidance in the exercise of such discretion. As stated by Mr. Justice Cardozo in his concurring opinion in *A. L. A. Schechter Poultry Corporation v. United States,* 295 U. S. 495 (79 L. Ed. 1570; 55 S. Ct. 837, 97 A. L. R. 947), the delegated power

must be "canalized within banks that keep it from overflowing" and that it can not be "unconfined and vagrant". Also see *Wichita Railroad & Light Co. v. Public Utilities Comm'n,* 260 U. S. 48 (67 L. Ed. 124, 43 S. Ct. 51), quoted with approval in *Panama Refining Co. v. Ryan,* 293 U. S. 388 (79 L. Ed. 446, 55 S. Ct. 241), wherein it is said:

"In creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function."

Mr. Justice RAND gave expression to the same thought in *Van Winkle et al. v. Fred Meyer, Inc., et al.,* 151 Or. 455 (49 P. (2d) 1140), when he said:

"It is a fundamental principle of constitutional law that in delegating powers to an administrative body the legislature must prescribe some rule of law or fix some standard or guide by which the actions of that body, in administering the law, are to be governed and made to conform."

■ Where is the rule or standard for guidance of the tax commission in the administration of this law enacted for the purpose of curbing extravagance of subordinate governmental agencies? The nearest approach to any standard is found in the oath of the commissioners that they will endeavor to secure an "efficient and economical administration of government in the county". What constitutes "efficient and economical" government is, we submit, purely a matter of opinion depending upon the social and economic philosophy of the individual. "Efficient and economical" government to one person may be just the opposite to another. It is not susceptible of definition. Public officials have been elected to secure "efficient and

economical'' government. If they fail in that respect they are answerable to the people who elected them.

It is plain that, in the absence of any definite standard, the act in effect authorizes the commission to substitute its judgment for that of officials elected by the people for the purpose of determining the governmental policy of the city. Such delegation of power is a departure from our constitutional system of government. It is an attempt to vest in an appointive board an essentially legislative function. A different question would be presented had there been a general legislative enactment fixing the limit of the tax levy of municipalities. In such case there would have been some rule or standard for the guidance of the commission and it could reject items in excess of the statutory limitation. See *State ex rel. v. Cooper*, 97 Ohio State 86 (119 N. E. 253), wherein the court had under consideration the ''Smith one per cent law'' (Gen. Code §§ 5649-2 to 5649-5b, inclusive) placing a limitation upon the amount of taxes municipalities could levy.

This court has upheld the legislature in delegating authority to a board to determine the qualifications of barbers (*State v. Briggs,* 45 Or. 366 (77 P. 750, 78 P. 361, 2 Ann. Cas. 424) and to a railroad commission to fix reasonable rates for common carriers (*State v. C. & E. R. Co.,* 59 Or. 450 (117 P. 980)) and to various other boards to ascertain facts upon which the operation of the law depended, but we see no analogy between such cases and the one under consideration. In those cases where the delegated authority has been upheld the facts were reasonably susceptible of being ascertained. Determining the qualifications of a barber and the reasonable rates of common carriers is a far different matter from determining the governmental policy of a municipality.

Oklahoma has a similar statute and the court in *City of Ardmore v. Excise Board of Carter County*, 155 Okl. 126 (8 P. (2d) 2), in commenting on the question of delegation of power said:

"To give the act the construction sought to be given to it would be to deprive every municipality of this state and the people thereof, acting through their duly elected officers, of the authority to determine for themselves, within the constitutional and statutory limitations, the amount of money to be raised and expended for the carrying on of local affairs. The people might be interested in having a well lighted city, and the valuation of the property within the municipality might be sufficient to authorize the local legislative body to provide for a well lighted city, under the authority of section 4568, C. O. S. 1921, but the excise board could deny them that right by striking from their estimate the item providing for the lighting of the city. The people of a city might be favorable to the operation of a municipal light plant. The excise board might be of the opinion that it would be advisable that the city discontinue the operation of the light plant, and, by striking from the estimate the item for the operation of the light plant, might defeat that right of the citizenship. The people of a city might be in favor of the leasing of an airport for municipal purposes. The excise board might be of the opinion that such an expenditure of money was not required for the needs of the municipality, and thereby defeat the right of the people to conduct the local government in the manner they see fit with the funds paid by them through the form of taxation."

It is the well-settled rule in Oklahoma that the excise board of that state has no authority to reject or reduce items in a budget submitted by the city when its estimated needs are not in excess of statutory limitations: *City of Yale v. Excise Board*, 156 Okla. 192 (10 P. (2d) 403); *City of Ardmore v. Excise Board*,

supra; *Excise Board v. Reid,* 143 Okla. 204 (288 P. 458).

*Tallon v. Vindicator Co.,* 59 Colo. 316 (149 P. 108), is not contrary to the conclusion herein reached for that case involved a general legislative enactment limiting the amount of levy for county expenses.

*Zoercher v. Agler,* 202 Ind. 214 (172 N. E. 186, 70 A. L. R. 1232), supports in general the contention of appellants that there has been no unlawful delegation of power in the instant case, but the Zoercher case involved the question as to whether the levy was in excess of the provisions of the law. The court held the reduction in the rate of assessments made by the tax board to keep within the statutory limitation was authorized.

*Dunn v. City of Indianapolis* (Ind.), 196 N. E. 528, entirely supports the theory of appellants as to delegation of power. That case goes to the extreme of holding that the levy of a tax is not a legislative function. We prefer the law as announced in the able dissent of Mr. Justice Fansler reported on page 698 of the above volume.

After careful consideration we have reached the conclusion that the Tax Supervising and Conservation Commission Act in so far as it purports to authorize the commission to reject or reduce items, when the budget estimates are not in excess of any constitutional or statutory limitation, is an unlawful delegation of legislative authority.

In view of the above conclusions that the act is unconstitutional, it is not necessary to answer the specific questions propounded by the city.

The decree of the lower court in so far as not inconsistent herewith is affirmed.

CAMPBELL, C. J., and BAILEY, J., not sitting.