MORAVEK'S CONCRETE, INC.
*v.*
DEPARTMENT OF REVENUE

L. P. COMPANY
*v.*
DEPARTMENT OF REVENUE

Robert J. Saalfeld, Harland & Ritter, Salem, represented plaintiff Moravek's Concrete.

Robert B. McConville, Salem, represented plaintiff L. P. Company.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered March 21, 1978.

CARLISLE B. ROBERTS, Judge.

Plaintiffs have separately appealed from orders of the Department of Revenue (from defendant's Order No. VL 77-15 in Tax Court case No. 1133 and from defendant's Order No. VL 76-594 in Tax Court case No. 1134, both orders dated January 21, 1977). Both appeals to the defendant were from the act of the Marion County Assessor in assessing and adding the plaintiffs' concrete-pumping trucks to the personal property tax rolls for the current tax year and four or five preceding years, as omitted property, pursuant to ORS 311.207 et seq. The issue presented for consideration is whether "concrete pump/boom trucks" are exempt from the personal property tax. The suits were consolidated for purposes of trial.

The pertinent statutes are ORS 481.270 and 481.272. The problems of interpretation presented by these statutes are set out in some detail in *Paullus v. Dept. of Rev.,* 7 OTR 181 (1977).

Upon examination of the statutes, it can be concluded, generally speaking, that the original legislative intent was to stimulate the purchase of motor vehicles and the building of roads suitable for motor vehicles by exempting such property from the usual personal property taxes, substituting registration and license fees in lieu thereof and depending upon fuel taxes for the building of highways. ORS 481.270 is a significant part of this legislative scheme.

However, ORS 481.272 provides for an exception to the principle of ORS 481.270, possibly resulting from the proliferation of special-use vehicles for use chiefly as "off-the-road" vehicles. Many of them represent substantial capital investments. The statute offers no relief from ad valorem taxation as to those vehicles which "are neither designed nor used primarily for the transportation of persons or property [other than the special equipment or machinery which distinguishes the vehicle] over public highways or streets. * * *" ORS 481.272(2). But the legislature made an exception to the foregoing exception which is set out in subsection (4) of ORS 481.272 as to certain vehicles which otherwise would come within the definition of "fixed load vehicles." The pertinent part reads:

> "As used in this section, 'fixed load vehicles' do not include * * * truck-mounted transit mixers, or self-propelled mobile cranes."

■ The difficulty in ascertaining the range or compass of the statutory language, "self-propelled mobile cranes," grows out of the fact that these words have a fairly wide application in the world of heavy, special-duty motor vehicles and, further, because no reason for this exception has been suggested by the legislature (or counsel) which will aid an administrator or the court in rationalizing which, of several

types of mobile cranes, are entitled to the tax advantage. *See* 32 Op Att'y Gen 123 (1965).

██ Pictures presented to the court in conjunction with the testimony of the plaintiffs show that the concrete pump/boom trucks are closely related to self-propelled mobile cranes hitherto approved for exemption; the same physical and mechanical principles are basic to their design. As stated by plaintiffs in their brief (Pl Memo, 1-2):

> "A crane, by definition, is a machine which raises, swings and lowers heavy objects by means of a mechanical arm or boom. A concrete pump/boom truck fits precisely within the definition of a crane because it is a machine which raises, swings and lowers concrete by means of a mechanical arm or boom. The concrete pump/boom truck is merely a specialized type of crane. The only difference between conventional self-propelled mobile cranes and concrete pump/boom trucks is that conventional mobile cranes use a winch/cable crane boom system to lift while concrete pump/boom trucks use a pump/hose crane boom system to lift.

> "The evidence establishes that conventional self-propelled mobile cranes and concrete pump/boom trucks are both used for the lifting and placing of concrete; in fact, when conventional cranes are already available on the job site sometimes both conventional cranes and pump/boom trucks are used to lift and place concrete simultaneously. Before pump/boom trucks were introduced conventional cranes were used to lift and place concrete. Now, pump/boom trucks are used more often to perform this function because they are simply faster and more efficient than conventional cranes. Both conventional self-propelled mobile cranes and concrete pump/boom trucks are designed and operate as vehicles for highway use. In fact, concrete pump/boom trucks are generally on the highway even more than conventional cranes because pump/boom trucks are more efficient at the job site and can therefore travel to more jobs during a given period of time."

An examination of ORS 481.272(3) shows that it takes notice of several vehicles used in the cement business: cement batch plants, cement mixers ("other

than transit mix"), cement spreaders, pavement finishers, paving mixers and cement finishing machines, all of which are particularly included in the list of "[f]ixed load vehicles" "not exempted from ad valorem taxation by ORS 481.270."

██ ██ The property which is the subject of these suits readily fits within the concept of "self-propelled mobile cranes," rather than in the fixed load vehicles enumerated above. While the legislative policy for exempting any of them is not clear, the court concludes that it is the legislative intent that they be given the benefits of ORS 481.270. Any other decision involves a weighing of subtle distinctions which, as likely as not, would be discriminatory and in no way would aid in the settlement of future questions. In the present state of the art, the court understands the words "self-propelled mobile cranes" to have a generic connotation, rather than being limited in some fashion which the defendant presumably conceives but which has not been conveyed to the court. ORS 481.272(4) does distinguish subspecies in some instances (*e.g.,* "mobile homes" and "travel trailers") but not with respect to self-propelled mobile cranes. The matter quoted above from the plaintiffs' memorandum serves as a guide.

The court takes note of 38 Op Att'y Gen 87 (1976), which concludes that a concrete pump/boom truck is a fixed load vehicle. The writer either overlooked the "self-propelled mobile crane" exception or concluded that a "self-propelled mobile crane" is a description so specific as to exclude the concrete pump/boom truck. The court respectfully disagrees with the writer of that opinion as to the degree of specificity.

The court deems the decision in *Paullus v. Dept. of Rev., supra,* to be correct in result but, in light of testimony received (without dissent or contradiction) in the present suits, it must recognize that its apparent reliance in the *Paullus* case upon the classification made by the Motor Vehicles Division of the motor vehicle which was the subject of that case was in error.

[ 389 ]

Mr. Malcolm Page, a veteran employee of the Motor Vehicles Division, testifying in this suit, made clear that his division depends upon purely mechanical tests for purposes of classifying fixed load vehicles and generally does not inspect the vehicles to determine their design, function or highway use. Mr. Page further testified that many individuals with fixed load vehicles merely list their vehicles on the application form as "trucks," without disclosing further information, and, in many instances, they will be issued a truck license and escape ad valorem taxation since reliance is placed by the division upon the classification given by the applicant.

■ The court agrees with the plaintiffs (and the defendant in the *Paullus* case, *supra*) that the work of classification of motor vehicles for purposes of ad valorem taxation under ORS 481.272 must rest with the county assessor, with initial appeal to the Department of Revenue. To the degree that language in *Paullus* contradicts this conclusion, the prior decision is deemed to be superseded. ("Pride of opinion should never deter a court from confession of error. * * *" *City of Portland v. Welch,* 154 Or 286, 294, 59 P2d 228, 231, 106 ALR 1188, 1195 (1936).)

The defendant's Order No. VL 77-15 (giving jurisdiction for appeal in Tax Court case No. 1133, relating to tax years 1971-1972 through 1976-1977), and defendant's Order No. VL 76-594 (the basis of jurisdiction for the appeal in Tax Court case No. 1134, respecting tax years 1972-1973 through 1976-1977), shall be set aside and held for naught and the County Assessor and the Tax Collector of Marion County shall correct the assessment and tax rolls for the indicated years as required by this decision, abating any taxes which may be shown upon the rolls in connection with the subject property. If taxes have been paid by the plaintiffs, the excess, with statutory interest thereon, shall be remitted to the plaintiffs by the Board of County Commissioners of Marion County, Oregon, pursuant to ORS 311.806 and 311.812.

Plaintiffs are entitled to their statutory costs and disbursements.