# KENNETH J. BYLUND
*v.*
# DEPARTMENT OF REVENUE

William A. Van Vactor, Assistant County Counsel for Lane County, Eugene, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered September 29, 1978.

CARLISLE B. ROBERTS, Judge.

Pursuant to ORS 305.560 and 305.570, the plaintiff, Director of Assessment and Taxation for Lane County, Oregon, charged with the assessment and collection of taxes in Lane County, has appealed from the defendant's Order No. VL 77-740, dated December 30, 1977. The question is whether an item of personal property, described as a Model C100 Savage Hydraulic Loader (Serial No. 1143), owned by Joseph D. Martin of Cottage Grove, used by Mr. Martin in the business of hauling logs, is subject to the personal property tax for the tax year 1976-1977, pursuant to ORS 307.190 and ORS 308.105, or is exempt from such tax within the provisions of ORS 481.270.[1]

---

[1] Plaintiff raised a second issue relating to the power of the defendant to utilize its supervisory power (ORS 305.090 and ORS 306.111) when issuing Order No. VL 77-740, but this issue was withdrawn at the time of trial.

[ 503 ]

The subject property (Assessor's Account No. 5340441) is a hydraulically operated crane which has been mounted on a 1970 White truck, Model 4562 TD (Serial No. BJ021HA-735642), also owned and operated by Mr. Martin during the year in question. Such cranes are commonly called "self-loaders," are manufactured and sold by a number of manufacturers, and have come into general use during the last few years. A loader weighs from 3,000 to 6,000 pounds; it must be constructed of high grade materials and is sold new for $14,000 to $16,000.

Self-loaders are most often bought and sold separately from the truck and, in fact, may be leased. They may be financed separately and insured separately. There is a market for used units. The plaintiff testified that there are now more than 100 self-loaders in use in Lane County.

The unit includes a vertical mast which can be firmly seated and secured at the rear end or in the middle of a truck frame or close to the cab. The mast supports a boom (constructed in three components for easy articulation) to which is attached a "bucket cross" from which is suspended a grapple or other equipment, depending upon the work to be done. The boom can swing in a complete arc of 360 degrees. The unit is operated by one man, using hydraulic controls, occupying a seat on a small platform located at the top of the mast. The power is obtained from the truck engine through a takeoff which operates a hydraulic pump. Hoses carry the hydraulic fluid to the several hydraulic cylinders which can be individually activated by the operator to control the position of the boom and the grapple. Hydraulically operated outriggers can be lowered on each side of the truck to add stability during operation.

The self-loader is clamped to the truck with bolts and steel angles and the truck is modified by steel reinforcement of the frame and provision for the power takeoff and a manual control knob for the

engine. Testimony showed that it could take two men several days to install a self-loader but removal of the basic unit can be done much more quickly.

Plaintiff admits that the cost of installing a self-loader upon a truck is approximately $1,500 but contends that, because of simplicity of removal, its identity as a separate unit should be deemed to continue and to render it taxable under ORS 307.190(2) as personal property used for the production of income. The defendant contends (1) that permanency of attachment is not controlling, because there is no statutory requirement that the self-loader be permanently attached to the vehicle in order to share its exemption from personal property taxation under ORS 481.270; but (2), if such a requirement exists outside the statutes, the self-loader was permanently attached to the vehicle.

■■■ ORS 307.190 establishes a general rule that items of tangible personal property held by the owner for the production of income are subject to taxation (unlike personal property held by the owner for his personal use). ORS 481.270(1) provides that "vehicles" shall be subject to registration and license fees, imposed by the State of Oregon "in lieu of all other taxes and licenses, except municipal license fees under regulatory ordinances, to which such vehicles, or the owners thereof by reason of such ownership, may be subject."

As stated in *Roy L. Houck & Sons v. Tax Com.,* 229 Or 21, 31, 366 P2d 166, 170 (1961):

> "For approximately 38 years prior to 1959 the exemption established by ORS 481.270 remained unchanged and unchallenged so far as it applied to equipment of the character owned by Houck [construction equipment described as scrapers, graders, and a Tournadozer]. * * *"

The court held that, prior to a 1959 amendment, these "vehicles" were exempt from ad valorem taxation because they had been registered and licensed by the state's Motor Vehicle Department (now Motor

[ 505 ]

Vehicles Division). The court construed the pre-1959 statute, pointing out that neither frequency of the vehicle's use of the highways, nor whether it was principally used on the highways, was a criterion or condition precedent for determining whether the vehicle could be registered and licensed by the Motor Vehicle Department. It further stated that the fact that the vehicle failed to comply with vehicular safety requirements did not prevent the owner from securing a motor vehicle license (although such failure prevented him from operating the vehicle upon the highways until he had complied with the safety requirements or obtained a "single continuous trip permit" for moving the vehicle from point to point over the highways).

ORS 481.272 was substantially enacted by Or Laws 1959, ch 417, § 3, effective January 1, 1960, to resolve the question which gave rise to the *Roy L. Houck & Sons* case, *supra; i.e.,* whether costly off-the-road vehicles (which are exempt from motor vehicle fuel taxes per ORS 319.010(11) and 319.280) should be licensed at a modest fee or should be subjected to ad valorem taxation. A classification of "special mobile equipment" was established and described in the new statute in some detail, preceded by the statement:

"(1) Special mobile equipment is not exempted from ad valorem taxation by ORS 481.270."

In Or Laws 1961, ch 539, § 2, ORS 481.272 was amended to substitute the words "[f]ixed load vehicles are" in lieu of "[s]pecial mobile equipment is."

■ ■ ■ Subsection (2) of ORS 481.272, with some assistance from subsections (3) and (4), is deemed by the court to be the key to the solution of the present question. It seeks to distinguish between those vehicles that are designed and used primarily for the transportation of persons or property over public highways or streets from those vehicles which are designed and used primarily for nontransportation purposes, off the highway. The first category is exempt

from the ad valorem taxation of the personal property by being licensed by the Motor Vehicles Division; units in the second category, "fixed load vehicles," are subject to ad valorem taxation, whether licensed or not. Many examples of the second category are listed in subsection (3) of ORS 481.272[2] and include such disparate items as air compressors, cement batch plants, crushers and crushing plants, diggers and ditchers, mixmobiles, athey wheels, *log loaders,* road rollers, tractors (wheeled and crawler) other then truck tractors, special construction equipment and the like, having one factor in common; viz., they are not designed or used to haul persons or property over the public roads.[3]

---

[2] ORS 481.272(3) provides:

"(3) For the purposes of this section, 'fixed load vehicles' include air compressors, air drills, asphalt plants, asphalt spreaders, bituminous plants, bituminous mixers, bituminous spreaders, bucket loaders, cement batch plants, cement mixers (other than transit mix), cement spreaders, carryalls, crawler cranes, crushers and crushing plants, diggers and ditchers, power units and plants, earth-moving scrapers, electric generating equipment, electric load-bank and wiring equipment, lighting plants and portable wiring, front-end loaders, scoopmobiles, payloaders, skip hoists, power hoists, road graders, motor graders, leveling graders, stackers, hoists, towermobiles, pavement finishers (bituminous and cement), power shovels, back hoes, drag lines, mixmobiles, portable shops, portable parts and storage bins, portable bins, portable storage tanks, fork lift trucks, athey wheels, log loaders, yarders, welders, road rollers, sheepsfoot rollers, paving mixers, elevator equipment, tractors other than truck tractors (wheeled and crawler), traction engines, bituminous and cement finishing machines, scarifiers and rooters, vibro screens, rotary screens, scrubber screens, sand classifiers and drags, plate feeders, apron feeders, scrap metal bailers, grain grinders, grain rollers, sawmills and special construction equipment. The enumeration in this subsection merely illustrates some of the vehicles that are included within the term 'fixed load vehicles' and shall not operate to exclude other vehicles that are within the purview of the term 'fixed load vehicles' as defined in subsection (2) of this section."

[3] Recognizing the proliferation of special equipment which is a notable aspect of the present era, the legislature has ended subsection (3) with a caveat: "The enumeration in this subsection merely illustrates some of the vehicles that are included within the term 'fixed load vehicles' and shall not operate to exclude other vehicles that are within the purview of the term * * *."

In its attack in the present suit, the plaintiff has given consideration to the personal property law of accession and to the law of fixtures; however, the court's view is that the use of these concepts, developed for the purpose of solving questions of title and priority, are not appropriate here for purposes of statutory construction. Questions of accession deal with rights of ownership in tangible personal property where the property belonging to one person has been attached to or incorporated in or intermingled with the property of another person and a dispute arises as to ownership. The law of fixtures is chiefly concerned with the definition of a "fixture" and the right to possession of specific fixtures as between particular persons. But in this suit we are dealing with a peculiar statute, ORS 481.272, and the legislative intent must be determined from the language used therein, if at all possible.

The chief thrust of the plaintiff's argument is that ORS 481.270 specifically exempts licensed vehicles but "[a] self log loader is not a vehicle." (Pl Trial Br at 5.) However, the excellent description of a self-loader presented by the plaintiff shows clearly that, while the loader is not a vehicle in and of itself, it is so designed as to be used effectively only when attached to and powered by a mobile unit.[4]

The defendant's argument rebuts plaintiff's accession theory as not controlling but asserts that it can be argued that the self-loader was permanently attached to the logging truck. Defendant then presents an

_____

[4] Plaintiff has consistently used the words "self log loader" in connection with the subject property and it is admitted that in the present situation the loader is used for loading logs on the taxpayer's log truck and trailer, but the loader and its standard attachments can be used for many purposes other than loading logs. The important fact is that the unit is attached to and made a part of a vehicle designed and used primarily for transportation of property over public highways and streets. If the unit were attached to a crawler tractor (as many self-loaders are), for use in the forest area and other off-road sites, the court would be presented with a different question, since "log loader" is specifically listed as a "fixed load vehicle" in ORS 481.272(3).

ingenious argument: since Oregon's annual license fees for motor trucks and truck tractors are based upon "combined weight" (ORS 481.210(2)(a)) and since "combined weight" is the "light weight" of the vehicle (the weight of a vehicle when fully equipped for moving over the highways) plus the weight of the maximum load which the vehicle may carry (ORS 481.010(2)(a) and 481.025(1)), the weight of the special equipment, the "log loader," is necessarily included in the maximum load for which the license fee is paid and therefore such added equipment is likewise exempt from ad valorem taxation (citing two cases from other states with somewhat similar laws). The court does not believe this is a useful argument. The defendant would certainly admit that any logs loaded on the log truck here involved, within the maximum load licensed for the truck, would not be exempt from other taxes and fees because of the truck's license. As the statute is written, it is not possible to conclude from defendant's argument that the self-loader is thus exempt from taxation.

■■ More to the point is ORS 481.272(2) which stresses that the licensed vehicle must be one "used primarily for the transportation of persons or property over public highways or streets" and that "property" which is in the form of a permanent load of equipment or appliances or which is "ordinarily kept on or in the vehicle in order that the vehicle may be used for its primary purpose" is exempt from personal property taxation by virtue of licensing. Once it has been established that the taxpayer's 1970 White truck, Model 4562 TD, is used primarily for transporting logs over the highways (after picking them up in the yarded area near the timber-cutting site) and carrying them over the public highways to mill owners and operators, other processors or shippers, then it does not matter whether the essential special equipment is permanently attached or kept on or in the vehicle as long as it aids in the principal mission of the truck. However, the court finds that, in the present case, the

equipment is "permanently attached," utilizing the same method (suitable bolts and nuts) used with respect to other components of the truck, including the engine. "Permanently attached" cannot be read too strictly in a paragraph which allows the exemption of property "ordinarily kept on or in the vehicle in order that the vehicle may be used for its primary purpose."

And, in construing the statute, the court cannot overlook the exception made in ORS 481.272(4) in the case of "self-propelled mobile cranes." The subject property in the present suit, including the use of the White truck, comes so clearly within the description of a self-propelled mobile crane that the decision in *Moravek's Concrete et al v. Dept. of Rev.,* 7 OTR 385 (1978), *aff'd* — Or ——, — P2d —— (1979), may be applicable thereto. (Counsel presented no argument in this suit, based on this concept.)

Order No. VL 77-740, dated December 30, 1977, is affirmed and plaintiff's appeal is dismissed. Each party shall bear its own costs and disbursements.